Campbell, J.
The plaintiff declared upon a promissory note, made by the defendant, payable to his own order, and endorsed *320 by himself. The defendant admitted in his answer the making and endorsing of the note, and set up, by way of defence, that it was made and endorsed by him for the purpose of being used . to renew and take up a previous note for the same amount. That the person into whose possession it came, and who claimed to be the owner of the first note, agreed to accept the note in suit and deliver up the first note. That he afterwards refused to deliver up the first note, and kept both notes, and paid no consideration for the note in question. The answer further sets up that this note was passed to the plaintiff after it became due, and with a full knowledge of all the facts set forth, and with full knowledge that it was void for want of consideration, and therefore denies that the plaintiff is the lawful holder and owner of such note, or that the defendant is indebted. The plaintiff replies and takes issue, averring that he is the holder of the note in good faith, and for a full consideration, and received the same before maturity, and that he had no knowledge as to the ¡alleged purpose for which the note was made, and denied the same.
On the trial the plaintiff moved to exclude the proposed defence, because the matters set up in the answer, if they constituted any defence, would be a defence to an action on the first note, which was paid or cancelled by the acceptance of the note in suit, and would, therefore, not avail the defendant in this action upon the second note. The court denied the motion, and the plaintiff excepted.
The making and endorsing of the note being admitted by the answer, the defendant then proceeded and proved the purpose for which the note in suit was made, as set forth in his answer, and that it came into the possession of the former owner and holder of the first note. The plaintiff also gave evidence tending to show that the former owner and holder of the first note had parted with it, and that he refused to apply the second note to take up the first; but such evidence was very slight. The defendant then rested. The plaintiff then insisted that no defence had been established, that no evidence had been given to show that the plaintiff had any notice or knowledge of the matters set up by the defendant, and that the plaintiff was not required to give any rebutting evidence.
*321 The judge ruled that the defendant had established a yyrimA facie defence, and that the burden of proof was now on the plaintiff, to which ruling the plaintiff* excepted.
The plaintiff then called Beecher, the former owner and holder of both notes, who testified that he parted with the note in suit, before its maturity, to the plaintiff for a full consideration and its legal interest, and that he- had appropriated the proceeds to the payment of other indebtedness, due from one Boscher, who was the party who had received both notes from the defendant, and for whose benefit the first note appears to have been discounted. The jury, notwithstanding, found a verdict for the defendant.
The objection taken by the plaintiff on the trial, that the matters stated in the answer do not constitute a defence to this suit, we think, is fatal to the defendant. That part of the answer is as follows—he says that said “ Boscher delivered said note in said complaint mentioned to said Beecher, for the aforesaid purpose ; that said Beecher, at the time, said he was and claimed to be the owner of said first mentioned note, and agreed to accept of said note, and deliver up the said note, which became due on or about the 6th of June, 1851, to defendant; that after delivery of said note in said complaint mentioned to said Beecher, he refused to deliver up said pote, due on or about the 6th of June, 1851, to this defendant, but kept both; that said Beecher never paid to this defendant any consideration for the said note in said complaint mentioned, and this defendant claims that the same is void for want of consideration.” The allegation is, that Beecher was the holder of the first note, and received the note in suit, agreeing to give up the other. The effect of his receipt and agreement was to destroy in his hands the first note. Suppose, immediately after the 6th of June, when the first note fell due, it had been put in suit by Beecher, then the matters set up in this answer would, if proved, establish a complete defence. Thisobjectionmighthavebeentaken by demurrer, and was properly taken, we think, on the trial. The verdict is, too, against the weight of evidence; but it is unnecessary to consider this point.
It was claimed by the counsel for the plaintiff, on the trial, that it was not sufficient fpr the defendant simply to show a *322 fraudulent misapplication of the note, but that it was his duty ■ to proceed and prove that the plaintiff had taken it" with notice and without consideration, and this point was pressed with much earnestness upon our attention on the argument. It is not to be denied that there has been considerable difference of opinion as to what is the true rule in cases of this kind—that is? upon whom rests the burden of proof—and we shall consider this question briefly for the purpose of explaining the views of this court. . In Holme v. Karsper, 5 Binney, 469, decided in 1813, Chief Justice Tilghman says,—“ In the first instance it is. presumed that every man acts fairly. It lies on the defendant, therefore, to show some probable ground of suspicion before the plaintiff is expected to do anything more than produce the note on which he founds his action. But this being done, it is reasonable that the holder should be called on to rebut the suspicion. All that is asked of him is to show that he has acted fairly and paid valueand the learned judge considers these the principles of the mercantile'law. In Munroe v. Cooper, 5 Pickering, 412, the court says,—“ We agree that a newtrial in this case must be granted, for the purpose of allowing the defendants to prove, if they can, that there was fraud practised in the inception of the note, or that it was fraudulently put in circulation. This fact being established will throw upon the plaintiff the burden of proof, to show that he came by the possession of the note fairly, and without any knowledge of the fraud.” In Bailey v. Bidwell, 13 Mees. & Welsb. 73, Baron Parke says,—“It j certainly has been, since the later cases, the universal under- ¡ standing, that if the note were proved to have been obtained by ‘ fraud or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality would dispose ; of it, and would place it in the hands of another person to sue í upon it; and that such proof casts upon the plaintiff the burden ' of showing that he Was a bond fide endorser for value.” That has been considered in later times as settled, and in this the 1 Court of Exchequer concurred. In the more recent case óf Smith v. Braine, in the Queen’s Bench, reported in 3d English Law and Equity Eeports, 379, the case of Bailey v. Bidwell is sommented on and approved. “Since the new rules,” says Lord Campbell, Chief Justice, “judges have, with entire appro *323 "bation, directed juries that, when the bill was illegal in its inception, or when the immediate endorser to the plaintiff ' obtained possession of it by fraud, the want of consideration, asbetween him and the plaintiff, may be presumed, and in such case the onus is cast upon the plaintiff of proving that he gave’ value. In a still more recent case, decided in the Court of Exchequer in June, 1851, reported in 4th English Law and Equity ’ Reports, 531, Harvey v. Towers the same rule is enforced, Platt, Baron, observing that “ the cases of Bailey v. Bidwell and Smith v. Braine, were the decisions of eight judges, and that the casting the burden of proving consideration on the holder of a bill, shown to be affected by fraud, was an extremely just rule, as he must best know what consideration he gave for it.” Such, also, would seem to be the rule in our own state. Thus, in Vallett v. Parker, 6 Wendell, 615, Savage, Chief Justice, “ the holder of a bill or note need not, in the first instance, show a consideration; possession proves property; but if there are any suspicious circumstances as to the honafldes of his possession, and the defendant has a good defence against the payee, then he must show that he paid value for it, For instance, if the note has been lost or stolen, or fraudulently put into circulation, &c., then the plaintiff must show that he came lawfully and fairly by it, and paid value for it,” (See also Woodhull v. Holmes, 10 John. R. 231; Conroy v. Warren, 3 John. Cases, 259.) The rule is laid down very distinctly and clearly in 2d Greenleaf on Evidence, § 172,—“Even in an. action by the endorser against an original party to a bill, if it is shown on the part of the defendant that the bill was made under duress, or that he was defrauded of it, or if a strong suspicion of fraud is raised, the plaintiff will then be required to show under what circumstances, and for what value, he became the holder. It is, however, only in such cases that this proof will be demanded of the holder; it will not be required where the defendant shows nothing more than a mere absence or want of consideration on his part.” The reason given in Bailey v. Bidwell is, that where there is fraud, the presumption is, that he who has been guilty will part with the note for the purpose of enabling some third party to recover upon it; and such presumption operates against the holder, and it devolves upon him to show *324 that he gave value for it. Where the defence grows out of mere absence, or want of consideration, no such presumption arises. Í The dictum of the judge in Nelson v. Corning 6 Hill, 336, must be considered as made with reference to the particular facts of that case, and not laid down as a general rule. ? We are of opinion that in this case the ruling of the judge on the trial, that the defendant had made out a prima faeie defence, and that the burden of proof was on the plaintiff,- was correct. But there remains a further question for consideration. When the plaintiff shall have shown that he is a holder for value, upon whom does it rest to give the proof as to notice? We think that the burden of proof shifts back upon the defendant. It may often occur that the plaintiff, in giving proof of value paid, will furnish for the defendant evidence of notice in cases where there has been collusion. But where the plaintiff is really a lyjna fide holder, it may well be, that he may prove the payment of value without being able to give any evidence as to notice,' because none,exists. Besides, as the law now is in this state, the defendant has always the means of proof in his own power, - in all cases, where he can rely upon the oath of the plaintiff, because he can at will place him on the stand as a witness. In cases, therefore, where there is fraud, or strong suspicion of fraud, made out by the defendant, the holder of a promissory note, or bill of exchange, who sues for its recovery, must then /' show that he received it before its maturity, and for a valuable ( consideration; and if he succeeds in this proof, the defendant, to defeat a recovery, must establish, if he can, that the note was received by such holder with notice of the fraud. But for the reasons first given in this cause, there must be a new trial, costs to abide the event.
Bosworth, J.
I think Boscher was incompetent as a witness. The note in suit was made by the defendant for his accommodation, and delivered to him for the purpose of taking up another note .also made by the defendant for his accommodation, and at the time outstanding. If a recovery be had by the plaintiff and the money is collected from the defendant, the amount can be’recovered from Boscher with the costs of the suit. On the other hand, if the defendant succeeds, the verdict at once *325 exonerates Boscher from all liability to the maker. In addition to this, he is actually defending this suit by an attorney retained by himself for the purpose. The suit is defended for his direct and immediate benefit, and is actually defended by himself. A verdict in favor of the defendant as directly, immediately, and absolutely, discharges Boscher from all liability to the maker, as it does the maker from all liability to the plaintiff. The result of a verdict for the defendant is of itself as beneficial to Boscher as to the defendant.
Such a party was Unquestionably incompetent before the-Code. That provides, in § 398, “ that no person offered as a witness shall be excluded by reason of his interest in the event of a suit.” The succeeding section declares that § 398 shall not apply to any person for whose immediate benefit it is defended.
Such a person stands in the same position as he did before the Code ; § 398 has no application to him; his interest in the event renders him equally incompetent as before. As to him, the Code has not changed the pre-existing law. That made him incompetent, and as to him the law is unchanged. (7 Barbour, S. C. R. 161, 162.)
This court decided at a late general term, in Howland v. Willetts, that in an action against the defendant for levying as sheriff,' on personal property claimed by the plaintiff to be his, on an execution against a third person, the plaintiff in the execution, who had indemnified the sheriff for .making such levy, was an incompetent witness for the defendant. That decision would seem to cover the precise question presented here, and be conclusive in this court against the competency of the witness. •
With respect to the main question in the cause, I understand thS^ rule to be well settled both in this country and in England, that where the maker of a note in a suit by an endorsee, proves that the note was lost by or stolen from him, or has been fraudulently put in circulation, the onus is then thrown on the plaintiff to prove that he bought it before maturity, bond, fide, and for value. (3 J. C. 260, 3 Conroy v. Warren, 6 Wend. 622; Vallett v. Parker, 1 Hall, 562; Fulton Bank v. Phœnix Bank.)
In January, 1851, it was decided by the Queen’s Bench in Smith v. Braine (3 L. & E. R. 379), and later in the same year by the Court of Exchequer in Harvey v. Towers (4 L. & Eq. *326 R. 531), that on general principles, irrespective of any questions arising upon the pleadings, when the maker proves that the bill is founded on illegality or fraud, or has been the subject of illegality or fraud, the plaintiff, though an endorsee, is compelled to show himself a bond fide holder for value. Such proof in behalf of the maker raises the presumption that the endorsement to the plaintiff was without consideration. The plea in each of those cases, alleged’ among other things, that the bill was endorsed to the plaintiff without consideration. Both courts held that this allegation, or some equivalent one, was essential to a perfect plea, but did not require the defendant to prove that the plaintiff paid no consideration.
The rule being settled, it is useless to discuss its wisdom. But it may be briefly and I think justly said, that such a rule presents no obstacles to* a free circulation of negotiable paper, in the honest transaction of ordinary business. Presumptively, there is no practical difficulty in a man of business being able to show when and of whom he received a bill or note, and what he paid for it. There may be exceptions to this, but they must be comparatively few. So there is presumptively no difficulty in the way of a bank proving when and for whom a note was discounted.
On the other hand, when a note has been fraudulently put in circulation, and more especially if it has been lost or stolen, the maker has no means of ascertaining through what hands it has passed, or how or when the plaintiff became the owner.
I think it was correctly ruled at the trial that the evidence established aprima faoie defence. It showed that the note had been left at Beecher’s office in his absence, to take up the note for which it was to be substituted. That the latter was at the time in the hands of third persons. That Beecher, instead of taking it up, negotiated the note in question, after being notified by his clerk of the purposes for which it was left, and thus fraudulently misapplied it. This was sufficient to cast the burden on the plaintiff of showing himself a holder for value before maturity, and of course established aprimd facie defence.
Whether the evidence given was competent under the pleadings, and whether the facts set up in the answer constituted a defence, even if true, are entirely different questions.
*327 The answer states that the note in suit was delivered to Beecher for the purpose of taking up the other note ^ that he agreed to accept of it and deliver up the other noíe; that after the delivery he refused to deliver up the other note, but kept both. If these facts are true,. I think the note in suit was a satisfaction in Beecher’s hands of the first note, and his acceptance of it, under the circumstances stated, would be a perfect defence to a suit by him on the old note. If so, the note in suit was a valid note in his hands. There is no allegation that he did not in fact hold the first note at the time the second was accepted, and that was agreed to be given up, or that he has not at all times since continued to hold the latter in his own right. According to the answer, the only ground of complaint is, that Beecher has not given up the first note after having received the second in lieu of it. The case made by the proof is, that the second note was left at his office in his absence, for the purpose of being substituted for the first. And though he was informed by his clerk of the purpose for which it was left, he suffered the first note to mature and continue in the hands of a third person, to whom he had -previously negotiated it, and fraudulently negotiated the note in suit for his own benefit.
The allegation of the defence was unproved in its entire scope and meaning, and the case is one on which there was an entire failure of proof. (Code, § 171.)
The court at the trial cannot direct the pleading amended, or the fact to be found according to the evidence, in such a case. (§ 169, 170, 171.) It can only do this where the variance between the pleading and proof is not calculated to mislead the plaintiff in maintaining his action, and not where the defence proved differs, in its entire scope and meaning, from that set up in the answer.
I think a new trial should be granted with costs to abide the event, on the grounds that Boscher was improperly admitted as a witness, and that the objection was well taken that the defendant should not have been allowed to prove the new matter stated in his answer, as it constituted no defence. Even as the Code was,when these pleadings were framed, only such allegations of new matter in answer as are material, are to be taken as true on a failure to put thém in issue by the reply. (Code, § 168.)
*328 If the plaintiff had not put them in issue in his reply, he could not have been prejudiced by it, if they do not constitute a defence. For if they do not, they are not material",’ and might have been stricken out on motion, as irrelevant or redundant.
Duer, J.
I cannot assent to the opinion that Boscher was an incompetent witness, merely from the fact, that he was personally liable to the defendant in case a judgment should be obtained against him. It may be -true, that Boscher had rendered himself thus liable by delivering the note in suit without obtaining a return of that it was meant to renew, and that this liability gave him a direct and certain interest in the event of the suit, which, as the law stood before the adoption of the Code, would have been sufficient to exclude him; and it is also true, that in all cases where a witness is thus interested in favor of the party by whom he is called, it may be justly said, that the suit is prosecuted or defended, as the case may be, for his benefit. But if every person is to be excluded as a witness, who will incur a certain loss, or derive a certain gain, from the determination of the suit in favor of the party by whom he is called, that provision of the Code, which declares that “ no person offered as a witness shall be excluded by reason of his interest in the event of the action” (Code, § 398), will be, in effect, repealed, since, when the Code was adopted, the rule, I apprehend, had been settled by the modern decisions, that it was only a direct and certain interest, in the event of the suit, that could operate^ as a ground of exclusion. It is evident, however, that the two provisions in the Code, that which excludes as witnesses those “for whose immediate benefit the suit is prosecuted or defended” (§ 399), and that which admits those, who are interested in the event of the suit, must receive, if possible, a consistent interpretation; and assuredly a construction cannot be given to the former by which the very extensive, and, I think, beneficial change, in .the law of eyidence, which the latter was meant to effect, shall be stripped of its meaning and vitality, and rendered wholly inoperative and void. There are no other means, however, as it seems to me, by which these two provisions can be reconciled, and the consequence that I have stated, be prevented, than by giving to the words “ for whose immediate benefit *329 the suit is prosecuted or defended,” a far more restricted interpretation than that, which judges, in some cases, seem disposed to adopt. The provisions can only Be reconciled by construing-section 399, as it was plainly meant to be construed, not as superseding the general rule, which the section immediately preceding declares, but merely as excepting certain cases from its future application; and the proper inquiry, therefore, is how shall the cases thus meant to be excepted be limited and defined, so as to leave an ample scope for the operation of the general rule, that the interest of a witness, in the event of the suit, shall not be permitted to exclude him.
In answering this inquiry, I shall not, in order to justify my own views, now enter on a critical examination of former decisions, but shall content myself with saying that the exceptions in § 399 must, in my judgment, be confined to those who are, in reality, parties to the suit, that is, are either parties on the record, or parties in interest. The words in the section, “ parties to the action,” I construe as meaning only a party on the record, and those that immediately follow, “nor to any person for whose immediate benefit it is prosecuted or defended,” as applying exclusively to a person who is a party in interest, and who, as such, will in law be as effectually concluded by any judgment that , may be rendered, as a party to the record. The latter words, thus construed, will be found to embrace two, classes of cases. First, when the party on the record calling the witness, is a nominal party only, and the real interest in the suit itself, is in the witness,- as when the party is a trustee and the witness a cesbui que trust, who will either have an immediate right to the money that may be recovered by the party calling him, or sustain an immediate and necessary loss from an adverse judgment; and second, when the "party calling the witness, although not merely nominal, yet prosecutes or defends the suit, at the request of, and under a positive indemnity from, the witness. The conclusive, reason for this second exception is, that a person under whose indemnity the action is prosecuted or defended, is in judgment of law a real party to the suit, who, as such, has a right to control the proceedings, and is, in all respects and for all purposes, concluded by the *330 judgment (1 Greenleaf on Evid. p. 523; 1 Smith Lead. Cases, Duchess of Kings, case; Morgan v. Thorn, 9 Dowl. 228; Rapelyea v. Bruce, 4 Hill 19; Bates v. Stanton, ante.) I add, that after much reflection, I am satisfied, that if any other exceptions than those, which have been stated, shall be admitted from the general rule that a witness is not disqualified by'his interest in the event of the suit, the rule itself, if not wholly abrogated, will be so narrowed, in its application, as to, be robbed of its chief utility and value. Courts of justice will find it difficult, if not impossible, to trace a clear line of distinction between the cases in which witnesses are to be excluded and those in which, notwithstanding their interest, they ought to be admitted; and in the result, the inconvenient and inequitable rules of the common law that were meant to be abolished—if not in terms, yet in substance—will be restored. Construing, however, the words of the Code, “ for whose immediate benefit the suit is prosecuted or defended,” in the limited sense that I have given to them, it by no means follows that Boscher was a competent witness. On the contrary, I entirely agree with Judge Bosworth, that by his own showing he was incompetent, and that the objection to his testimony taken upon the trial ought to have been allowed, He admitted upon his cross-examination, not merely that he was defending the suit at his own expense, but that he was bound to pay to the defendant the money that might be recovered—by which I understand him to mean that he had bound himself, by an express promise, to satisfy the judgment, if a judgment were recovered. His actual liability was a sufficient consideration for this promise, and his agreement to indemnify the defendant, consequently, valid. The case, therefore, falls within one of the exceptions that I have admitted to exist, and is not distinguishable from that of the witness who was excluded by the court in Howland v. Willetts.
Upon the other- questions in the cause I agree, substantially, with my brethren, and deem it unnecessary to add any remarks to the observations which they have made, f am not, however, prepared to say, that had. the defence set up on the trial been properly admitted under the pleadings, the verdict could not *331 be set aside as against the weight of evidence. This is not a question, however, which it is necessary to discuss; and in the result, that a new trial must be granted, we all concur.