NEW-YORK PRACTICE REPORTS.    **501**

Allen and others agt. The Franklin Fire Insurance Company.

## SUPREME COURT.

DARIUS ALLEN and others agt. THE FRANKLIN FIRE INSURANCE COMPANY.

In case of an assignment by a debtor to a trustee for the benefit of his creditors, the *assignor is a competent witness* for the assignee, or trustee, in an action brought by the latter for the recovery of a demand belonging to the trust estate. Though interested in the event, the action is not prosecuted for the assignor's immediate benefit.

(*This is adverse to the decision in the case of Fitch* agt. *Bates*, 11 *Barb*. 471, *and agrees with Davies* agt. *Cram*, 4 *Sand. S. C. R.* 355, *and Catlin* agt. *Hansen*, 1 *Duer*, 309.)

As it respects the question of *interest*, the doctrine of the Code is, that a witness shall not be rejected because he has an interest in the event of the action, even though that interest be direct and immediate. But he shall be rejected when the suit is prosecuted or defended for his immediate benefit; as where he is a party to the action, or, though not a party upon the record, is the real party in interest.

Where the action is brought by the assignee against the defendant as a contracting party with the assignor, *notice*, under the 399th section, that the assignor will be examined as a witness is not necessary.

(*This is adverse to the case of Knickerbocker* agt. *Aldrich*, 7 *How. Pr. R.* 1.)

That provision relates to cases where the parties to the transaction in controversy are not parties to the action, and applicable only to cases where the adverse party in the action appears before the court in a representative capacity. This objection can only be made when it is proper to examine an assignor as a witness against an assignee or an executor or administrator.

An equity of redemption in a chattel mortgage, is sufficient to constitute an insurable interest.

*Albany General Term, February*, 1854.

Present, WRIGHT, HARRIS, and WATSON, Justices.

Appeal from judgment on report of referee. The defendants, by a policy of insurance, bearing date the 21st of April, 1851, agreed to insure Fellows, Corps & Co. against loss or damage by fire, to the amount of $1,000, on certain machinery and fixtures in the city of Troy. On the 5th of July, the property insured was destroyed. Notice and proof of the loss were duly given. On the 18th of August following, Fellows, Corps & Co. made a general assignment of their property and effects to

the plaintiffs for the benefit of creditors. This action was brought by the assignee to recover the amount of the policy with interest.

On the 8th of March, 1851, Fellows, Corps & Co. had executed a chattel mortgage upon the property insured to Allen and Waterman, to secure the payment of $2,500 with interest, payable on demand. Other policies of insurance upon the same property, at the time the mortgage was executed, and of which the defendants when they made their policy were duly notified, had been assigned to the mortgagees as collateral security. The defendants insisted in their answer that by means of this incumbrance the interest of the insured in the property was reduced to a sum vastly below the amount of the insurance; that Fellows, Corps & Co. had fraudulently withheld from the defendants the knowledge of this incumbrance.

Upon the trial before the referee, Lewis Fellows, one of the assignors, was offered as a witness on behalf of the plaintiffs. He was objected to on the ground that, being an assignor, no notice had been given of his examination as a witness, and also because, having made a general assignment for the benefit of creditors, he was a real party in interest. The objections were overruled, and the defendants excepted to the decision. The referee reported that there was due to the plaintiffs the sum of $1,065.78. Judgment having been perfected on the report, the defendants appealed.

W. A. BEACH, *for plaintiffs.*
H. W. MERRILL, *for defendants.*

By the court. HARRIS, Justice. It is insisted that the decision of the referee in allowing the witness, Fellows, to be examined, was doubly erroneous : first, because the suit was prosecuted for his immediate benefit; and, second, because, though otherwise competent, the defendants were entitled to notice that he would be examined upon the trial. Both grounds of objection are sustained by authority. In Fitch agt. Bates, (11 *Barb.* 471,) where an insolvent debtor had assigned his property in trust for his creditors, it was held that the assignor

was not a competent witness in a suit by the assignee for the recovery of a demand belonging to the trust. And in Knickerbocker agt. Aldrich, (7 *Howard*, 1,) it was held that the notice required by the 399th section of the Code must be given in all cases, where the assignee would avail himself of the testimony of his assignor upon the trial. Other courts, however, have taken a different view of the provisions of the section in question. See Davies agt. Cram, (4 *Sand. S. C. R.* 355,) Catlin agt. Hansen, (1 *Duer*, 309,) Bean agt. Canning, (10 *Leg. Obs.* 248.) What effect is to be given to these provisions may therefore still be regarded as a question open for consideration. I proceed to examine it.

At common law, a witness was disqualified when he had any legal, certain, and immediate interest in the event of the action. The 398th section of the Code abrogates this rule. It declares that the witness shall no longer be held to be disqualified for such cause. But for the succeeding section a witness could never be rejected on the ground of interest. That section retains the common law rule so far as it would disqualify a party to the action, or any other person for whose immediate benefit the action is prosecuted or defended. So far, then, as it relates to the question of interest, the doctrine of the Code is this: that a witness shall not be rejected because he has an interest in the event of the action, even though that interest be direct and immediate. But he shall be rejected when the suit is prosecuted or defended for his immediate benefit. If the owner of a debt bring his action to recover it, and afterward assign the demand, the suit may proceed in the name of the original plaintiff, but it will be prosecuted for the immediate benefit of the assignee. If the debt is collected, he will have the legal right to receive it. If the plaintiff is unsuccessful in the action, he will be ordered to pay the costs of the defence. Though his name does not appear upon the record, he is the real plaintiff in the action. In such a case the assignee not only has a legal, certain and immediate interest in the event of the suit, but it is prosecuted for his immediate benefit. The inquiry, therefore, is no longer whether or not the witness will

gain or lose by the result, but it is whether he is a real party to the action. In other words, whether he will take the fruits of the action if successful, or bear the loss if unsuccessful. A residuary legatee will gain or lose by the success or defeat of an action brought by the executor. The amount of his residuum will be increased or diminished as the result. But it cannot be said that the action is prosecuted for his immediate benefit. He has no right to take the conduct of the suit—success will enure to his ultimate benefit, and thus he has the legal interest which, at common law, would disqualify him as a witness; but he would have no right to receive the money, if collected, nor would he be under any obligation to indemnify the executor, if defeated. Thus, while he has a legal, certain, and immediate interest in the event of the suit, it is not prosecuted for his immediate benefit. It is so, I think, in the case of an assignment by a debtor to a trustee for the benefit of his creditors. The assignor has a direct interest in having the demands he has assigned collected. His own liabilities will thereby be satisfied. But he has no right to the moneys collected. He has no right to control the suit. He incurs no liability in case of defeat. Though interested in the event, the action is not prosecuted for his immediate benefit.

This construction of the terms used in the 399th section is sustained by the corresponding provision found in the 396th section, which authorizes the adverse party in the action to examine " the person for whose immediate benefit the action is prosecuted or defended, in the same manner and subject to the same rules of examination as if he were named as a party." Thus the real party in interest may be regarded by the adverse party as the party to the action. Such a party is called "the person for whose immediate benefit the action is prosecuted or defended." No one would pretend that any person, whatever his interest in the event of the suit, could be examined as a witness under the provisions of the Code authorizing the examination of a party to the action, if he be not, in truth, the real party in interest. Suppose that, in Fitch agt. Bates, above cited, the Leonards, the assignors, had been examined under

the authority contained in the 396th section, on the ground that they were the persons for whose immediate benefit the action was prosecuted, I apprehend that even the learned judge who pronounced the decision in that case would not have allowed the examination to be read on the trial. And yet, if the Leonards were the persons for whose immediate benefit the action was prosecuted, the 392d section of the Code would authorize either party to read their examination, as the examination of a party. Nor will it be pretended, I am sure, that the corresponding terms in the 399th section have any broader application than the same terms in the 396th section. If in the latter section they apply only to the real party in interest, they must also be so construed in the 399th section.

The construction which, in *Fitch* agt. *Bates*, has been given to the clause under consideration, completely neutralizes the 398th section of the Code, and, in effect, retains the common law rule of disqualification: "If the result of the cause will *directly* and *immediately* affect any right or interest of the person proposed as a witness, and adversely, if against the party calling him, then, says Mr. Justice HAND, 'he is inadmissible.'" "At common law," says the same learned judge, "the interest, to disqualify, must be some legal, *certain*, and *immediate* interest in the result of the cause." The two propositions, as I understand them, are in substance identical, and thus, what was intended to be a mere restriction upon the operation of the general principle declared in the 398th section, is made to destroy it altogether—a construction which will produce this effect must, of course, be defective. Instead of the common-law rule, which disqualified the interested witness, the legislature intended to adopt the general principle that a witness should not be excluded on the ground of interest. This is declared in the 398th section. To prevent misapprehension, and not to impair the operation of the general principle, it was declared in the next section that it should not be applicable to parties to the action, nor, as I understand the language adopted by the legislature, to those who, though not parties upon the record, are the real parties

in interest. I agree with Mr. Justice DUER, in Catlin agt. Hansen, above cited, that the words "parties to the action," in the 399th section, are to be construed as meaning parties upon the record; and that by persons "for whose immediate benefit the action is prosecuted or defended," the legislature meant persons who are parties in interest, and who, as such, will be concluded by the judgment as effectually as though they had been parties to the record.

It being determined that the witness, Fellows, was not disqualified by reason of his interest in the event of the suit, the remaining inquiry is, whether the plaintiffs could avail themselves of his testimony without giving the notice specified in the last clause of the 399th section. Here, again, I am constrained to differ with my learned brethren in the fourth district. The construction given to this provision in Knickerbocker agt. Aldrich, above cited, cannot, as it seems to me, (and I say it with the most undissembled respect for the distinguished judges whose decision I thus venture to question,) be sustained. To prevent fraud and injustice, the legislature, in the original adoption of the Code, had declared that when it should appear that an assignment had been made for the purpose of making the assignor a witness, the principle adopted in the 398th section, that a witness should not be excluded on the ground of interest, should not be applicable to the case But this provision was found to be insufficient to meet the evil contemplated by the legislature. Accordingly, in 1851, it was abolished, and, in place of it, a more equitable and effective provision was substituted. Now, the assignor, even though he may have made the assignment with a view to become a witness in an action by his assignee, is not disqualified, but, on the other hand, the other party to the contract or transaction, which is the subject of the action, though himself a party to the suit, may become a witness on his own behalf. Thus, when one party, by means of an assignment, has become legally qualified to become a witness, and the assignee will avail himself of his testimony, the other party to the contract or transaction shall also be heard. *Audi alteram partem* is the

principle adopted by the legislature. Both parties must be allowed to testify, or neither. Accordingly, and with a view to carry out this principle more effectually, it is provided that when the other party to the contract or transaction is dead, or, for any other reason, his testimony cannot be procured, the assignor himself shall not be examined. From the very nature of the provision, it is apparent that it has reference to cases where the parties to the transaction in controversy are not parties to the action. Accordingly, this restriction upon the right of a party to examine his assignor as a witness is declared to be applicable only to cases where the adverse party to the action appears before the court in a representative capacity. This objection can only be made when it is proposed to examine an assignor as a witness against an assignee, or an executor, or administrator. In these cases, two things must concur. The assignee, executor, or administrator, against whom it is proposed to examine the assignor as a witness, must be able to procure the testimony of the other party to the contract or thing in action in question, and then notice of such intended examination must be given in the manner prescribed. These provisions relate exclusively to cases where the assignor is to be examined against an assignee, executor, or administrator. In these cases, the assignor shall not be admitted, &c., *unless*, &c., *nor unless*, &c. The grammatical structure of the sentence obviously refers to the provision requiring notice to the same antecedent as the other provision prohibiting the examination of the assignor altogether when the other party to the transaction cannot be examined. Every rule of construction requires that the whole clause should be read together and referred to the same subject matter. That subject matter obviously is, the examination of an assignor against an assignee, executor, or administrator. When that is the case, the party against whom he is to be examined must have the notice prescribed. In other cases, no notice is requisite.

In the case now under consideration, the defendants were one of the contracting parties. The action having been

brought by an assignee, they were bound to know that the assignor would be a competent witness, and to prepare themselves to meet his testimony without notice of the plaintiff's intention to examine him. In this there is no hardship. Being a party to the transaction, the defendants may be presumed to be acquainted with the case, and there is no greater reason for giving them notice of the examination of the assignor than of any other witness.

The only other point upon which the defendants rely relates to the chattel mortgage. The mortgage had been executed prior to the insurance. It was payable on demand. The mortgagors had covenanted to keep the property insured, and to assign the policy to the mortgagees. Under these circumstances, there can be no doubt that the mortgagors had an insurable interest. There is no evidence that payment had been demanded. If not, the mortgagee's title had not become absolute. But even if it had, the mortgagors would still have had an equity of redemption, which would have been sufficient to constitute an insurable interest. No error appears to have been committed upon the trial, and the judgment must be affirmed.