DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

AT MARCH TERM, 1862.

---

## DUNCAN, SHERMAN & CO. *vs.* HIRAM GILBERT.

1. The mere fact that a note is given as accommodation paper does not affect it in the hands of a third party, even if the fact of its being such paper was known by the endorsee at the time of the endorsement; and where no other proof is given in defence, the holder is not bound to prove that he gave value for the note.

2. In a suit brought against the maker or endorser of negotiable paper, the defendant may prove that the note was obtained from him by fraud, or that it was fraudulently put in circulation; and in such case, to entitle the plaintiff to recover, he must prove that he bought it before maturity, *bona fide*, and for value.

3. To constitute a misappropriation of negotiable paper, there must be a fraudulent perversion of its original object or design.

4. If a note is made or endorsed as accommodation paper, with the understanding that it is to be discounted at a certain bank, or that money is to be obtained upon it in a particular manner, it is no fraudulent misappropriation of the note if it is discounted at another bank, or that money or credit was obtained upon it in a different way from what was intended. If the note effects the substantial purpose for which it was designed, it is not material whether it was effected in the precise manner contemplated, unless there is fraud, or the interest of the maker or endorser is prejudiced.

Duncan, Sherman & Co. v. Gilbert.

5. Where an accommodation note is given with the understanding that the payee is to get it discounted at a certain bank for his benefit, and, instead of getting it discounted, he deposits it as collateral security for letters of credit obtained for himself, it constitutes no misappropriation of the note, unless there is evidence of fraud, or that the interest of the drawer is prejudiced.

6. Where a defendant alleges that a note was given to take up a certain other note, parol evidence is admissible to prove that it was given and accepted to take up a different note from the one alleged; and even if an accommodation note is given to take up a certain note of the payee, and he uses it to take up a different note from the one intended, it is no fraudulent misappropriation of the note.

7. The holder of accommodation paper, assigned to him as collateral security, cannot recover of the accommodation maker or endorser any more than the amount actually advanced upon it; but, in such case, as well as where the note is taken in payment of a security for an antecedent debt, the presumption is that the holder paid full consideration for the note; and, to overcome this presumption, the defendant must prove that the plaintiff did not give full consideration for it.

8. Where an accommodation note is pledged as collateral security for letters of credit, the liability incurred by the party issuing the letters of credit is a sufficient consideration for the note; and, to entitle him to recover the face of the note, he is not bound to prove that he has actually paid the amount for which the letters of credit were issued. If the letters are unrevoked, and his liability still continues, it is a good consideration.

In error to the Supreme Court.

*Rutherford*, for plaintiff in error.

*Gilchrist*, for defendant.

The CHANCELLOR. The errors assigned, and the points made by the plaintiffs in error, present two questions, viz.:

1. Did the burthen of proving that the plaintiff gave a valuable consideration for the notes in question rest upon the plaintiffs, or was it thrown upon them by the evidence offered upon the part of the defendant?

2. If the burthen was upon the plaintiffs, was the issue upon their part sustained by proof that they gave a valuable consideration for the notes?

The action was by the endorsers against the maker of

Duncan, Sherman & Co. v. Gilbert.

two promissory notes endorsed to the plaintiffs before maturity. The plea was the general issue. The formal issue was upon the plaintiffs. They maintained that issue upon their part by simple proof of the drawing and endorsement of the notes. They were bound to prove nothing more until the *onus* was shifted upon them by evidence on the part of the defendant.

The defendant, upon the trial, offered evidence to prove, by way of defence—

1. That the notes, in their inception, were mere accommodation paper; that they were given by Gilbert to Rowland to be discounted for the accommodation of the payee.

2. That the notes were misappropriated by Rowland, and were unlawfully endorsed to the plaintiff in fraud of the maker's rights.

3. That they were assigned to the plaintiffs as collateral security for future advances to be made by the plaintiffs to Rowland, the endorsee.

Were these facts established upon trial? and if so, did they shift the *onus*, and throw upon the plaintiffs the burthen of proving that they paid a valuable consideration for the notes?

It is clear that the mere fact that a note, in its inception, was accommodation paper, and that no consideration was given for it by the payee to the maker, does not affect its validity in the hands of a third party, although the fact of its being accommodation paper was known to the endorsee at the time of the endorsement. When no other proof is given in defence, the holder is not bound to prove that he gave value for the note. *Collins* v. *Martin,* 1 *Bos. & Pul.* 651; *Charles* v. *Marsden,* 1 *Taunt.* 224; *Grant* v. *Ellicott,* 7 *Wend.* 227; *Ross* v. *Bedell,* 5 *Duer* 467; *Knight* v. *Pugh,* 4 *Watts & Serg.* 445.

As between the original parties to accommodation paper, it is of no value and can never be enforced. Its sole purpose is to raise money, or procure credit upon it by

transfer to a third party. To hold, therefore, that the want of consideration in its inception will destroy its value in the hands of the endorsee will defeat the very purpose for which it was made.

2. But where a defendant, who is sued as the maker or endorser of negotiable paper, proves that it was obtained from him by fraud, or that it was fraudulently put in circulation, the plaintiff must prove, in order to recover, that he bought it before maturity *bona fide* and for value. *Bailey* v. *Bidwell*, 13 *Mees. & W.* 73; *Smith* v. *Braine*, 16 *Ad. & El.* (*N. S.*) 244; *Harvey* v. *Tower*, 6 *Excheq.* 656; *Fulton Bank* v. *Phœnix Bank*, 1 *Hall S. C. R.* 562; *Munroe* v. *Cooper*, 5 *Pickering R.* 412; *Catlin* v. *Hansen*, 1 *Duer* 309.

It becomes, then, a material inquiry whether the notes in question were fraudulently put into circulation.

The facts, as shown by the evidence, are that the notes were borrowed by Rowland from Gilbert, with the understanding that they should be discounted at the Grocers' Bank and Artisans' Bank, in the city of New York, for Rowland's benefit. Gilbert had no personal interest in the manner in which the moneys obtained by the discounts should be used. The notes, instead of being discounted, were deposited by Rowland, as collateral, with Duncan, Sherman & Co., 'under an agreement with them (made at the time of obtaining the letter of credit) to keep deposited with them bills receivable to the amount of £2000 sterling. It seems to have been assumed, in the opinion of the court below, that this was a misappropriation of the paper, and the opinion proceeds upon that ground.

In *Edwards on Promissory Notes* 316, it is said that where an endorsement is made to enable the maker of a note to obtain a discount at a *particular bank*, or to raise money in a given way to pay a certain draft, the maker has no right to use the note in any other way. The statement is inaccurate, and calculated to mislead. It creates the im-

pression that a change in the mere mode or plan of raising the money, though applied to the purpose intended by the endorser, will constitute a misappropriation. But the authorities cited in support of the proposition show clearly that, in order to constitute a misappropriation of negotiable paper, there must be a fraudulent perversion of the original object and design; and the rule appears to be perfectly well settled, in the courts of New York as well as elsewhere, that where a note is endorsed for the accommodation of the maker, to be discounted at a particular bank, it is no fraudulent misappropriation of the note if it is discounted at another bank, or used in the payment of a debt or otherwise, for the credit of the maker. If the note has effected the substantial purpose for which it was designed by the parties, an accommodation endorser cannot object that the accommodation was not effected, in the precise manner contemplated where there is no fraud and the interest of the endorser is not prejudiced. *Powell* v. *Waters*, 17 *Johns. R.* 177 ; *Bank of Chenango* v. *Hyde*, 4 *Cowen* 567 ; *Bank of Rutland* v. *Buck*, 5 *Wend.* 66 ; *Mohawk Bank* v. *Corey*, 1 *Hill* 513 ; *Zellmeyer* v. *Caffee*, 5 *Duer* 94.

The notes in question were made exclusively for the accommodation of Rowland, and they were applied to that object. That the accommodation was not effected in the precise manner contemplated ; that Rowland, instead of having the notes discounted at bank, obtained credit for himself by depositing them in the hands of bankers, in the absence of all evidence of fraud or prejudice to the interest of the drawer, constitutes no misappropriation of the paper.

There was also evidence before the jury, on the part of the defendant, tending to show that the $1464 note (one of the notes sued for) was drawn and deposited with the plaintiffs in order to take up the other note for $918, and this not having been done, it is urged constituted a misappropriation of the larger note. But this clearly consti-

tuted no misappropriation, for the note, according to the evidence, was used for the purpose for which it was given. The ground of complaint is, that the plaintiffs, having received the second note in redemption of the first, refused to surrender it according to their agreement, and therefore the judge very properly charged the jury, that if they believed the evidence, the plaintiffs were not entitled to recover upon the $918 note, which was to have been surrendered.

A question was also made, upon the trial, whether the $1464 was made and deposited to take up the note for $918, or another note of the same character, for $1140. The question was submitted to the jury, with instruction that if the $1464 note was deposited with the plaintiffs to redeem the $1140, the plaintiffs were entitled to recover upon both notes for which the action was brought. The jury so found, and they must therefore have believed, upon the evidence, that the plaintiffs' witness was mistaken in saying that the first note was made and deposited to take up the $918, but that in fact it was made and deposited to take up the $1140 note, to which purpose it was applied.

There was, then, in point of fact, no fraudulent misappropriation of either of the notes in question. On that ground, the plaintiffs were not required to prove that they gave value for them.

3. In the third place, it is urged that the notes in question were assigned to the plaintiffs as collateral security for future advances to be made by the plaintiffs to Rowland, the endorser; that the plaintiffs, therefore, were not holders for valuable consideration ; that they can recover no more than the sums actually advanced, and that the burthen of showing what advances were made rested on the plaintiffs.

It is certainly true that the holders of accommodation paper, assigned as collateral security, can recover against the accommodation maker and endorser no more than the

consideration actually advanced. But the presumption is in favor of the plaintiff. By the law, as understood in this state, a party taking negotiable paper in payment of or as security for a precedent debt, is a *bona fide* holder for valuable consideration, and entitled to protection as such. The legal presumption in the absence of fraud is, that the holder of negotiable paper gave for it not only a *valuable* but a *full* consideration; and this presumption must be overcome by the defendant. He must prove that the plaintiff did not give a full consideration. This point was expressly decided in *Allaire* v. *Hartshorne*, 1 *Zab.* 673. The defendant in that case, upon the trial, proved that the plaintiff paid only a partial consideration for the note. The judge at the circuit, nevertheless, held that the plaintiff was entitled to recover the full amount of the note. This court decided that the defendant was entitled to show that the note was originally given without consideration, that the plaintiff paid only part value for it, and that upon such proof the credit should be for the amount actually due the plaintiff, and no more.

In *Edwards* v. *Jones*, 7 *Car. & Payne* 633, which was an action upon a note for £400 by the endorsee against the maker, the defendant pleaded that it was accommodation paper, and that the plaintiff gave no consideration for the endorsement. The plaintiff replied, as to a part of the consideration, he paid £49 2s. 1d. and as to the balance of the note, he entered a *nolle prosequi*. Issue was taken on the replication. At the trial, Alderson, Baron, said this issue lies on the defendant, and as he offers no evidence there must be a verdict. The case is very strong to show that the legal presumption is that the *bona fide* holder of a note paid full value; or if he admits that he paid but part value, the presumption is still in his favor that he paid the amount alleged to have been paid, and if the defendant claims that he paid less, he must prove it. Such clearly is the law of this state touching the point in controversy.

But it is admitted that this contract was made in the State of New York, and that its construction and operation must be governed by the laws of that state. The principle recognized by the Supreme Court of the United States, and by, perhaps, most of the state courts, and which was adopted by this court in Allaire *v.* Hartshorne, is, that every person is a *bona fide* holder for value of negotiable paper who has received it in payment of a precedent debt, or who has taken it as collateral security. A different rule has been adopted by the courts of New York. It has been there repeatedly held, and seems to be the established rule of that state, and which must be adopted by this court in dealing with this question, that where the holder has received the paper, either as nominal payment or as security for an antecedent debt, without giving up any security which he previously had, or giving any new consideration, he is not a holder for valuable consideration. If, then, the notes in question, or the notes for which they were substituted in the hands of Duncan, Sherman & Co., were given as security for a pre-existing debt, and were received by the plaintiffs without giving any new consideration, they are not, under the law adopted in New York, holders for a valuable consideration, and the decision of the Supreme Court is right. If, on the other hand, the plaintiffs gave a new security or incurred a new liability upon the receipt of the notes, the instruction of the Circuit Court to the jury was correct, and the judgment of the Supreme Court erroneous.

On the 30th of March, 1856, the plaintiffs issued their mercantile letter of credit to Rowland for £2000 sterling. By this letter, Rowland was authorized to draw on Peabody & Co., in London, for account of himself, for any sums not exceeding in all £2000 sterling running at any one time uncovered by remittances in the hands of the drawers, and the plaintiffs agreed with the drawers, endorsers, and *bona fide* holders of all bills drawn under and in compliance with the terms of the credit, that the same

Duncan, Sherman & Co. v. Gilbert.

should be duly honored on presentation. The credit was to remain in force until revoked. By this letter of credit, Rowland was enabled to procure funds in Europe upon the credit of Duncan, Sherman & Co. for an indefinite time, the simple limitation being that the sums running at any one time uncovered by remittance should not exceed the sum of £2000. For the honor of the bills thus drawn, the credit of the house of Duncan, Sherman & Co. was pledged. In consideration of the issue of this letter of credit, and at the time of issuing it, securities were deposited with Duncan, Sherman & Co. by Rowland to the amount of the letter of credit. The evidence shows that the letter was issued upon the deposit of those securities and upon an agreement that Rowland should keep deposited with Duncan, Sherman & Co. bills receivable to the amount of the letter. The consideration of the transfer of the securities to the plaintiffs was an engagement by the plaintiffs to furnish Rowland a credit of equal amounts in Europe. The one promise was a good consideration for the other. The issue of the credit was a valuable consideration for the transfer of the papers. The holder of the notes parted with something of value upon its transfer to him. So the judge at the circuit instructed the jury, and this part of the charge appears to have been fully concurred in by the Supreme Court. The notes in question were substituted for the notes originally deposited; and upon their being received, the plaintiffs surrendered other securities in their hands. These facts constituted the plaintiffs *bona fide* holders of the notes in question for a valuable consideration, and entitle them to all the protection which that character affords. As I understand the decisions of the courts of New York, (and I speak with some hesitation of the views of the judicial tribunals of another state) there is no distinction between the construction given by the courts of that state and by our courts to the construction and effect of the contract upon the evidence offered in this case. The plaintiffs

being *bona fide* holders of the note in question, the presumption of law was that they gave full value for them. The defendant offered no evidence which shifted upon the plaintiffs the burthen of proving that they gave a full consideration for the notes. If the letter of credit had not been used to its full extent, or if the credit had not been furnished, or the letter had been canceled, it was incumbent upon the defendant to show it. The instruction of the judge to the jury upon this point was correct.

On the trial, evidence was admitted, on the part of the plaintiffs to prove that the note for $1464 was not given to take up the note for $918, as alleged by the defendant, but another note of Gilbert, for $1140.20, which matured on the 18th of June, 1857. The admission of parol evidence of the contents of the last note, without proof of its loss or destruction, was assigned for error in the Supreme Court, by whom the ruling of the judge at the circuit was sustained. It is now urged that the ruling of both courts upon this point was erroneous, and that upon this ground the judgment of the Circuit Court should be reversed.

The existence of the note, the contents· of which were thus permitted to be proved, was not disputed, nor was its genuineness or its contents at all material to the issue between the parties. They were collateral to the question in issue. The evidence was offered for the mere purpose of identifying the note which was agreed to be given up to the defendant, and of distinguishing it from another note, which the witness on the part of the defendant testified was to have been given up. The contents of the note were no more material to the question in issue than were the style of the writing or the color of the paper upon which it was written. It was, therefore, just as competent for the witness to testify that the note to be exchanged was for $1160.20, and matured on the 18th of June, as it would have been to prove that it was written

on blue paper with red ink, and not on white paper with black ink. The limitations of the rule excluding parol evidence of the contents of written instruments, and the principle upon which they rest, are clearly and accurately stated in the opinion of the Chief Justice. In that opinion, and in the conclusion of the court upon the admissibility of the evidence, I fully concur.

There is no error in the record of the judgment of the Circuit Court. The judgment of the Supreme Court should be reversed, and the record remitted to that court, to the end that the judgment of the circuit may be there affirmed, with the costs of affirmance in that court, in like manner as if the judgment of affirmance had been there entered upon the hearing of the writ of error to the circuit.

BROWN, J. The notes on which this suit was brought were made by the defendant, Gilbert, for the accommodation of one Rowland. It is insisted that he, in transferring them to the plaintiffs, fraudulently diverted them from the use prescribed by the defendant; and that the plaintiffs have therefore upon them the *onus* of showing that they received them for a valuable consideration. It appears that Gilbert was in the habit of lending notes to Rowland, with the understanding that they were to be used in certain banks in New York for Rowland's benefit. This understanding does not limit the use of them to those banks, so as to make any other use of them a fraud upon Gilbert. He had no interest in the proceeds, nor, so far as it appears, did it make any difference to him what disposition Rowland made of them. But it is further insisted that one of the notes was given to take up the other, and that Rowland, instead of doing this, left both outstanding against Gilbert. If this was so, it was a misappropriation, and a fraud upon Gilbert. The fact, however, was controverted upon the trial. Gouge, the clerk of Rowland, testified that he obtained the note for ($1464) one thousand four hundred and sixty-four dollars from

Gilbert, with the understanding that it was to be substituted for the ($918) nine hundred and eighteen dollar note, those being the notes in suit. He further testified that when he gave the former note to Leet, the clerk of the plaintiffs, he asked for the nine hundred and eighteen dollar ($918) note; that Leet said it was out for collection—that he would get and return it.

Leet testifies that there was a third note given by Gilbert to Rowland, and deposited with the plaintiffs, for one thousand one hundred and forty ($1140) dollars; that the fourteen hundred and sixty-four ($1464) dollar note was brought to him to take it up; that he told Gouge it was away—that he would get and return it, and did so. Upon this testimony the jury may have found, and rightly, that Gouge was mistaken in his testimony on this subject; that he had forgotten the ($1140) eleven hundred and forty dollar note, and that Leet's statement was true. Any fact that the jury could properly find from the testimony must be assumed. Taking Leet's testimony as true, and that of Gouge to be a mistake, there was no misappropriation of either of these notes by Rowland proved, and the plaintiffs must be considered as holding them for a valuable consideration, till the contrary appears.

But, assuming that the notes were fraudulently misappropriated by Rowland, without the knowledge of the plaintiffs, the question is, whether they were passed by Rowland to the plaintiffs for a valuable consideration. If such proof appears by the case, it is, of course, not material upon which part lay the *onus probandi*.

The plaintiffs, at the trial, having proved their partnership, and the execution and endorsements of the notes being admitted, *rested*. The defendant proved the issue of a letter of credit by the plaintiffs to Rowland, authorizing him, or any one else by his order, to draw on George Peabody and Company, London, for any sums not exceeding two thousand pounds (£2000) running at one time, to be used in the purchase of goods for import into the

United States, and guaranteeing that the bills should be duly honored, the credit to remain in force till revoked by the plaintiffs; also, an acknowledgment in writing of the same date, by Rowland, of the receipt of the letter. By this writing, in consideration of the credit, Rowland agreed to provide for the payment in New York of the bills drawn under it, and to give the plaintiffs security to cover the amount of it. This clause of Rowland's agreement is as follows: "This credit being issued on our present liability and the deposit of securities, we do hereby agree with Messrs. Duncan, Sherman & Co. that we will regard and treat the same as confidential, and to be protected and paid in all emergencies, and that *we will at any time give them securities to cover the same if required."*

Rowland was called as a witness for defendant, and testified that the notes in suit were transferred to the plaintiffs before maturity, under an agreement, made at the same time with the letter of credit, to keep deposited with them bills receivable to the amount of it—new notes to be substituted as the old ones matured.

There was no evidence that the credit was revoked, nor that it had been used. The presumption is, therefore, that the credit continues, and that nothing has been drawn under it.

It is admitted that the contract and notes were made in New York, and that the case is to be decided according to the law of that state.

The leading case is *Bay* v. *Coddington*, 20 *J. R.* 638, and the rule, as established in it, is stated in 3 *Kent's Commentaries* 81, as follows: "That if the paper be not negotiated in the usual course of business, nor in payment of any antecedent or existing debt, nor for cash or property advanced upon it, nor for any debt created *or responsibility incurred upon the credit of the note,* but was taken from the agent of the owner after he had stopped payment, and as security against contingent responsibilities previously incurred, the rights of the true owner are not barred."

Duncan, Sherman & Co. v. Gilbert.

Chancellor Walworth, in *Stalker* v. *McDonald*, 6 *Hill* 96, states the rule in Bay v. Coddington as follows: " The decision admits that the *bona fide* holder of negotiable paper, who has received it for a valuable consideration without notice or reasonable ground to suspect a defect in the title of the person from whom it was taken in the usual course of business or trade, is entitled to full protection; but that when he has received it for an antecedent debt, either as *nominal* payment or as security for payment, without giving up any security for such debt, as he previously had, or paying any money, or giving any new consideration, he is not a holder of the note for a valuable consideration so as to give him any equitable right to detain it from its lawful owner."

In the same case Woodward, J., remarks, after stating the equities in favor of the real owner: " It is enough if the holder be secure when he advances his funds, *or makes himself liable on the credit of the paper he receives.*"

Again, in the same case, in commenting on the opinion of Ch. J. Eyre, in *Collins* v. *Martin*, 1 *Bos. & Pul.* 648, he says: " The language of the court cannot be mistaken—something must have been paid in money or property, or some existing debt satisfied thereby, *or some new responsibility incurred in consequence of the transfer.* This would be paying value, and making out a good consideration within the meaning of the rule."

In the cases now referred to, and in most if not all the other cases cited from New York, the question was, whether the transfer of notes as security for the payment of antecedent debts would be supported when in fraud of the prior owners; and it must be considered as settled in that state, that a note made for the accommodation of the payee, as these were for Rowland, and fraudulently diverted from the use prescribed by the maker; as is now assumed, cannot be transferred by the payee so as to be held as collateral security for the payment of an ante-

cedent debt or for the performance of an antecedent obligation, whether debt or duty.

But this rule does not apply to the case now under consideration. Here, in effect, is a promise by the plaintiffs to maintain a credit for Rowland in London, and by Rowland to return the avails of that credit in New York, and to make the plaintiffs safe from loss by the pledge of securities to the amount of the credit. The agreement so to indemnify the plaintiffs has for its consideration the guarantee of the plaintiffs, that George Peabody & Co. will honor Rowland's bills on presentation. The legal effect in this suit, of these promises, is the same as if the plaintiffs had agreed to pay Rowland's drafts to the amount of two thousand (£2000) pounds at their counter in New York, in consideration of a promise by Rowland that he would pledge to them and keep in pledge with them, securities to the same amount.

The promise of Rowland to return the avails of his London credit in New York is not an antecedent obligation within the meaning of the rule. By antecedent, in this connection, is meant not only prior in point of time, but distinct in point of consideration. If the consideration has been exhausted in raising the obligation, without requiring security, the obligation is antecedent to the pledge of security for its performance; as if the consideration has raised a promise to pay, and no more, the debt is antecedent, and is not in New York a sufficient consideration for the transfer of such notes as collateral security; they can only be used in discharge of the debt. But if the consideration has produced more, not only the debt, but a promise to secure it, then with reference to that promise the debt is not antecedent but concurrent; the provision for security is one of the terms of the contract, and rests upon the same consideration as that to which it is ancillary.

In this case the main obligation of Rowland was to pay in New York the amount of his drafts on Peabody &

Co.; and the ancillary obligation, made at the same time and on the same consideration, was to make such payment sure by pledging securities to the full amount he was authorized to draw. These obligations were concurrent—neither antecedent to the other.

Nor was either promise collateral to the other, but both original, not only within the meaning of this rule, but also that settled in questions arising under the 4th section of the statute of frauds. It is true that in one sense all securities by way of pledge are collateral to a principal obligation. If the principal obligation is performed the pledge is released; but in the sense of these rules, a promise or security is not collateral where it is given pursuant to the contract and upon the same consideration. If it be one of the terms of the contract it is original, although it may be ancillary to its principal object.

It follows, supposing these notes to have been transferred after the issue of the letter of credit, that they were not pledged as collateral to an antecedent obligation, but in direct performance of a present obligation. The obligation was, that Rowland would give the plaintiff's securities to cover the amount of the credit if required, and responding to this obligation, the notes were given. This, like paying a debt or performing a covenant, is the execution of an agreement, the rendering one of the agreed equivalents for the consideration enjoyed or to be enjoyed.

In the case of *Fenley and Johnson* v. *Pritchards*, 2 *Sand. S. C. R.* 151, this question was considered. One Mills had in his possession notes made by Pritchard, which he had paid, and for which Mills gave no consideration. Mills bought flour of Fenley and Johnson, and was to give for it his note at thirty days and collateral security by notes. The flour was delivered, and four or five days after, Mills gave his note, and after that a few days the collateral notes, among others those of Pritchard. Fenley and Johnson sued upon the notes. The defence was, that

the notes were given for a pre-existing debt. Vanderpoll, J., in giving the opinion of the court, says, "This is not the case of receiving notes as security for a pre-existing debt without parting with anything of value. The giving collaterals was one and an indispensable condition or consideration on which the plaintiffs parted with their flour. They would not, when the contract was made, receive the personal responsibility of Mills alone for payment. Had they received the collaterals simultaneously with the delivery of the flour, and as part consideration therefor, their title to protection, as against the equities of the defendant, would have been unquestionable. . . . . Whether the notes were delivered at the time of the delivery of the flour, is not the true test in this case. The true and controlling question is, whether the plaintiffs parted with their flour on the condition and with the understanding that collateral security was to be given. Of this there can surely be no doubt. . . . . It is urged, in behalf of the defendant, that these particular notes were not specified as among the collaterals that were to be transferred. We cannot perceive how this can weaken the position of the plaintiffs. Collateral security was with them an indispensable consideration for parting with their property. These notes were offered and accepted in satisfaction of such consideration. What was general when the contract was made was rendered specific and certain when the notes were delivered and accepted."

These notes were not transferred to secure an antecedent obligation; but the question remains to be considered, whether the transfer is supported by a valuable consideration, as understood in New York.

It has been seen in the citations made that any responsibility incurred upon the credit of the notes is sufficient to protect the holder against the equitable defences of the owner. This idea is clearly stated by Chief Justice Savage in several cases like the present. In *Rosa* v. *Brotherton*, 10 *Wend.* 88, he says, "He (the plaintiff) gave

nothing for the note, advanced nothing, nor *incurred any responsbility upon its credit."* In the *Ontario Bank* v. *Worthington*, 12 *Wend.* 601, he says, " It is the fact of parting with property or *incurring responsibility* upon the defendant's credit, and that alone, which gives the superior equities." In *Payne* v. *Cutler*, 13 *Wend.* 606, " I understand the law to be, that the maker of a negotiable note may set up any defence against the holder which he might against the payee, unless the holder has advanced money or property, *or incurred liability upon the credit of the note."* It cannot be doubted that these passages express the law of New York, and that there, as everywhere else, the incurring a responsibility for another is a valuable consideration, and will protect the holder against the defences of the owner of a note, in accordance with the policy of the commercial rule. The plaintiffs gave no property for these notes, but they did incur a responsibility for Rowland upon the credit of them. Rowland has the right to use the plaintiffs' money or credit in London, and that is the consideration for his promise to deposit securities and for the performance of that promise. It is a case of mutual liabilities constituting valuable considerations for each other. If notes were deposited when the letter of credit was issued, this question could not arise as to them, the mutual considerations in such case are concurrent, inclusive of the notes; if notes were so deposited, and these substituted, the surrender of those for which these were substituted is a valuable consideration for the transfer. But if no notes were pledged when the letter was issued, there was the subsequent pledge of these made upon a valuable consideration. This places the question in the most favorable aspect for the defendant, and I think it is clear that it must be answered in the affirmative. If the consideration were past and executed, as if the two thousand (£2000) pounds had been drawn and the credit revoked, there would be no doubt. The case of Fenley and Pritchard, above cited, would

decide the case in that aspect.  But as the case was left by the proofs of the defendant, the credit unrevoked, and nothing drawn under it, the considerations are continuing and executory on both sides; and that passing to Rowland just as valuable as the plaintiffs' liability to keep two thousand (£2000) pounds subject to his draft in London.  The letter of credit continues to say, as it said on the day of its date, "We authorize David Rowland to draw," &c.  Rowland continues to say, as he said when he received the letter, "I agree to give the plaintiffs securities to cover the amount of the credit if required."  The securities were required, for Rowland testifies that they were deposited pursuant to the agreement; they were not measured in amount by drafts drawn, but, as provided in the agreement, by the amount for which they could be drawn.  Rowland performed his agreement by depositing notes—these among others.  The consideration is the letter of credit, the thing for which he agreed to give these securities; the plaintiffs' liability to maintain it continues unrevoked on the faith of them.  If the defendant should insist that Rowland has received no value because he had drawn nothing, the plaintiffs' answer would be, he may draw now; we are maintaining this credit for him now.

When the letter of credit is revoked the day of settlement will have arrived.  The question then will be, how much has been drawn? what remains unpaid?  And the securities will be held or surrendered as the result may show debts due or nothing due.  Until that time no general account of debts and credits between the plaintiffs and Rowland need be stated for any purpose, certainly not for the purpose of ascertaining what amount of securities the plaintiffs may hold.  That is fixed in the contract at two thousand pounds.

Taking the New York doctrine more broadly, perhaps, than it obtains, the test, as stated by Senator Vielie, in *Bay* v. *Coddington*, 20 *Johns. Rep.* 656, "that when the

Duncan, Sherman & Co. v. Gilbert.

holder is left in as good a condition after a retransfer as he would have been had no transfer taken place, then the title of the owner shall prevail," it does not rule this case.   If it be said that if Rowland has not drawn, the plaintiffs may protect themselves from future drafts by revoking the credit, the answers are—first, the plaintiffs cannot be called upon by the defendant to adopt that remedy ; second, that if the plaintiffs did revoke, still a draft might be made to reach London, and be accepted for a *bona fide* holder before notice of revocation to Peabody & Company.   It might depend upon the greater or less activity or success of the parties or their carriers, but the uncertainty would exist.   The revocation should be effectual before the securities are withdrawn or such defence to them allowed.

Again, the test, as stated by Woodworth, J., in the same case, have they paid value for the notes, or made any new engagement as the consideration of the transfer?

In this test the word *new* may properly be emphasized in cases where the notes are pledged as collateral to an antecedent obligation, to an obligation arising from a past and executed consideration, not connected by the contract with the pledge to be given.   But no new consideration is needful to support the transfer when one of the terms for passing the original consideration to the endorser is such transfer.   This binds the transfer to the original consideration, and if that is valuable, as has been shown, it supports all the promises based upon it and the performance of them.

As to the other exceptions, the opinion expressed by the Chief Justice in the Supreme Court appears to me to be very clear and conclusive.

Judgment reversed.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, and Judges BROWN, ELMER, VREDENBURGH, COMBS, CORNELISON, KENNEDY, and WOOD.

CITED *in Holcomb* v. *Wyckoff,* 6 *Vr.* 36, 38 ; *Eaton* v. *Eaton,* 6 *Vr.* 294 ; *Chaddock* v. *Vanness,* 6 *Vr.* 520 ; *Knapp* v. *Hoboken,* 10 *Vr.* 397 ; *Savage* v. *Ball,* 2 *C. E. Gr.* 144.