WHITAKER, impleaded, &c. *v.* BROWN.

A note given in the name of a firm by one of its members for moneys collected by him as the *agent* of the *payee*, is a valid note against the firm, where the moneys thus collected were in the nature of a *loan to the firm*.

A note given by one of several partners in the name of the firm, is of itself presumptive evidence of the existence of a partnership debt; and if the other partners seek to avoid its payment, the burden of proof lies upon them to show that the note was given in a matter not relating to the partnership business, and that with the knowledge of the payee.

All the members of a firm are liable for *money lent to the firm* upon the application of one of the partners, and it is not necessary to show the actual application of the money to the use of the firm, or the assent of the other members to such application thereof.

Whether if money is borrowed by one member in his individual character, and applied to the use of the firm without the knowledge or assent of the other partners, all the members of the firm are liable—*quere*.

The case of *Jaques* v. *Marquand*, 6 Cowen, 497, reviewed, commented upon and distinguished from the present; and the case of *Whitaker* v. *Brown*, 11 Wendell, 75, virtually overruled.

ERROR from the supreme court. Brown, as the holder of a note given by the firm of *John Norcott & Co.* for $26,25, payable to William Roy or bearer, sued *Isaac Whitaker* and *John Norcott* in a justices' court. The justice gave judgment for the plaintiff. The defendant appealed, and the cause was subsequently tried in the Yates common pleas. The note was dated 23d August, 1828; no time of payment was specified, and it was transferred to Brown by the payee in the autumn of 1829. At the date of the note and for some time previous, *Whitaker* and *Norcott* were partners as grocers. The signature of the firm was in the hand-writing of *Norcott*. Whitaker, who alone defended, proved by Roy the payee that the note was given on a settlement for rent collected for him by Norcott, consisting of the sum of $30 due for certain premises let to one *Walling* for one year from 4th May, 1827, and of a small balance due for the same premises in the preceding year; the rent being payable quarterly. The witness

further testified, that a few days subsequent to 4th May, 1827, *Whitaker* applied to him to let Norcott have $50, which was wanted to pay an execution against them, Whitaker and Norcott, for a debt contracted for groceries. He did not make the loan. About a week afterwards *Norcott* made application to him for the loan of $50, stating that Whitaker had told him he thought he could get it of witness. He however at that time declined, but in about a week thereafter told Norcott he might collect the money of *Walling* as it became due, and use it in the grocery business, and he would not charge any interest upon it; and that he gave him such permission upon the responsibility of Whitaker. He also testified that when Norcott gave him the note, he said it ought to be given *in company*, as the *rent* was used in the partnership concern, as was intended. This latter testimony was objected to by the defendant as inadmissible, but the objection was overruled. The jury under the charge of the court found a verdict for the plaintiff, and judgment was rendered thereon by the *common pleas;* which judgment was affirmed by the *supreme court* upon writ of error. The defendant sued out a writ of error, removing the record into this court.

The following opinion was delivered in the supreme court:

" *By the Court*, NELSON, J. Sometime in May, 1827, Whitaker, one of the defendants, applied to Roy, the payee of the note in question, to borrow fifty dollars, for the use of the firm composed of the defendants. No loan was made. Shortly after the other defendant applied, saying that W. had mentioned he thought he could get it of him. No loan was then made; but a few days after this, Roy told Norcott he might apply the rent as it became due, which as agent he was collecting for him, to the use of the firm. The note was given on a settlement with the firm for the amount of this rent, the partnership name being signed by Norcott. Whitaker was a farmer, and lived some five miles from the grocery, the subject of their partnership, and Norcott was the business man. The court left the question to the jury,

whether Whitaker had knowledge of the application of this money to the partnership purposes. It appears to me that the circumstances disclosed were sufficient to warrant the jury in coming to the conclusion that the money was loaned to the firm, and used by it. The fact of W.'s application to borrow, and soon after the renewal of it by N. fairly authorized R. to conclude that the latter had a right to borrow for the purposes claimed, and if so, it was not necessary to show the actual application of the money to the partnership business. The fact that N. was the sole acting partner, was calculated to aid the above inference, as he knew best the necessities of the business."

The cause was argued in this court by

*S. Stevens,* for the plaintiff in error.

*R. N. Morrison,* for the defendant in error.

The following opinions were delivered :

By the CHANCELLOR. The note in controversy in this suit, upon which the defendant in error has been permitted to recover in the court below, was given in the name of the firm of John Norcott & Co. by one of the copartners, during the existence of the partnership, and for a debt which, at the time of giving the note, he admitted to be a debt due from the firm to the payee. A note given by one partner in the name of the firm, is of itself presumptive evidence of the existence of a partnership debt, as each partner has a general authority to contract debts in the business of the firm. The burden of proof, therefore, lay upon Whitaker, in this case, to show that this note was not given for such a debt ; and I think he has wholly failed in establishing that fact. The evidence shows that the firm was in want of money and each partner had separately applied to Roy to borrow it for the purposes of the copartnership. Under these circumstances Roy authorized one of the partners to receive money which was due and to become due to him for rent, and to apply it to the uses of the firm. This was

ALBANY,
Dec. 1836.

Whitaker
v.
Brown.

a loan of that money to the *firm* and not to the *individual partner;* and when Norcott afterwards received the mo-ney, he received it as one of the copartners, under that agreement ; and the firm became liable for the payment thereof to Roy, in the same manner as if Norcott had received the money immediately from Roy upon the original application to loan money to the firm. It would not be necessary for the lender, in either case, to show that the partner who borrowed the money or received it for the firm, actually applied it to partnership purposes. Although Norcott had been the agent of Roy to collect his rents, the moment those rents were loaned to the firm, he received them for the use of the firm, and not for the use of Roy. Neither was it necessary that Whitaker should assent to the application of the money to the purposes of the copartnership, for one partner may bind the firm for a debt contracted on account of the partnership business, although it is in direct opposition to a private agreement between the partners, if the creditor has not notice of such agreement at the time the debt is contracted. *South Carolina Bank* v. *Case,* 2 Man. & Ryl. Rep. 459. If it had been necessary for the holder of the note to prove that the money for which it was given had been received and applied to the purposes of the partnership, I think the admission of Norcott during the existence of the partnership, when the note was given, was sufficient evidence of the fact to bind the firm in a case where there was nothing to create a suspicion of any collusion between him and Roy. But as I have before said, the note of the firm was *prima facie* evidence of the indebtedness of the copartnership ; and the burden of proving that it was the individual debt of Norcott lay upon the partner who sought to set up that defence.

The case of *Jaques* v. *Marquand,* 6 Cowen, 497, relied upon by the counsel for the plaintiff in error, is entirely different from the one now under consideration. The real question presented by the pleadings and evidence in that case was, whether one of the co-partners could transfer his individual indebtedness to the firm, without the consent of his creditor, so as to prevent the latter from recovering the

debt in a suit against such individual partner. What was said by Justice Sutherland in that case, as to the assent of the other partners to the application of *Bussing's* money to the purposes of the firm, was not called for by the case then under consideration. The defendant, Marquand, had received certain goods, on his individual responsibility, to sell and pay the proceeds to Bussing. The proceeds of the goods were, therefore, moneys had and received by Marquand to Bussing's use ; and the suit was brought by the assignee of the latter to recover that money. The defendant pleaded in *abatement*, and attempted to defeat the suit by showing that he had used the money in the business of his co-partnership with another person. As the creditor had never assented to this misapplication of the money, or agreed to look to the co-partnership for payment, the firm could not be made his debtors against his will, so as to discharge the individual liability of Marquand. But if the money had been actually applied to the business of the firm as the money of Bussing, and not as the individual funds of Marquand, I am not prepared to say that Bussing might not have elected to consider the firm as his debtors, as for so much money had and received to his use, although the other members of the firm had not assented to the transaction, otherwise than by their general authority to Marquand to contract debts on account of the partnership business ; and, in the case supposed, if the note of the firm was given to secure the repayment of the money, it could not properly be said that it was given for the separate debt of the individual partner merely.

In any view I have been able to take of this case, therefore, I think this was a note upon which both of the copartners were jointly liable. The judgments of the courts below, were therefore right, and should be affirmed.

By *Senator* Maison. This appears to me to be a very plain case, and it is matter of especial wonder, that this note should have been so long in litigation between these parties in our courts, before any final decision could be had, putting an end to the controversy. The plain and simple ques-

ALBANY,
Dec. 1836.

Whitaker
v.
Brown.

tion presented is, whether one member of a firm can borrow money for the use of the firm, and all the partners be made liable for its repayment.

The fact, that the plaintiffs in error were partners in the grocery business, having been established, the admissions of either of the partners, in relation to the subject matter in which both partners had a community of interest were admissible. This is unquestioned law. See Gow on Partnership, 211, 212, and cases there cited. These partners had a community of interest in the *rent moneys;* they went into the business of the firm, according to the orignal understanding and agreement between Roy and Norcott. The court below decided correctly under such circumstances, in admitting the evidence of what Norcott had said, in relation to this matter. In this particular case, the rents being permitted to be received by Norcott for the use and benefit of the firm, and the moneys having been thus received and applied, it was immaterial whether Whitaker knew of the receipt and application of these moneys to the partnership business or not, and, therefore, the exception to the charge of the judge in this respect, is not available.

It will be conceded, that if Norcott had borrowed these moneys on his own responsibility, and had actually applied the moneys for the benefit of the partnership, the partners would not be holden by any act or declaration of Norcott, unless the partners knew and approved of such application; their knowledge and silence would be an admission of liability. *Dob* v. *Halsey,* 16 Johns. R. 38. *Foot* v. *Sabin,* 19 id. 157, 8. *Jaques* v. *Marquand,* 6 Cowen, 502, 503. But the present is not such a case. The receipt of these rents, which, in my view, is the same as borrowing money, was expressly, by the understanding of the parties, for the benefit of the firm. It is immaterial whether the note was given at the instant the money was received or afterwards, so long as the fact be that the moneys were in good faith loaned to and for the use and benefit of the firm. Suppose Norcott had borrowed one thousand dollars for the use of the firm, and given the partnership note for it, (and this is almost an every day's transaction,) can it be pretended, that

the firm would not be liable, unless they had given their consent to the making of the note, or their assent to it afterwards? To hold that they would not, would be to break up all confidence in partnership associations, and would shackle and embarrass all transactions with partners to the great impediment of trade and commerce. "It would be strange and novel doctrine," said Lord Ch. Justice Ellenborough, in *Swan* v. *Steele*, 7 East, 213, " to hold it necessary for a person receiving a bill of exchange endorsed by one of several partners, to apply to each of the other partners to know, whether he assented to such endorsement, or otherwise that it should be void." See also Gow on Partnership, 54. Their liability cannot be questioned or doubted.

The note of a firm is deemed in the commercial community, *prima facie*, to have been given in the fair legitimate course of the partnership business, and such is the judgment of law, *Doty* v. *Bates*, 11 Johns. R. 544; and consequently, the partner objecting to be made liable, is bound to make out a case, which will exonerate him ; upon him is cast the *onus probandi*. If he objects, that the note was given in payment of the individual debt of one of the members of the firm, he must prove it. If he objects, that the money for which the note was given was never brought into the partnership business, he must not only prove that, but he must also prove, that the person to whom the note was given, knew that the money was borrowed for the individual use of the partner borrowing, and not for the firm. If he objects, that the money was borrowed by one of the firm, and upon the responsibility of the partner borrowing, he must prove it, and, proving it, the firm is not liable, unless it be shown by the opposite party, that the moneys were, in fact, used in the partnership business, with the knowledge and consent of all the partners. 6 Cowen, 502. Whitaker has furnished no evidence in discharge of his liability—nor is there any evidence in the case, but what satisfactorily shows these moneys, for which the note was given, were received and used for the benefit of the firm.

This case is clearly distinguishable from that of *Jaques* v. *Marquand*, so much relied upon by the counsel for the plaintiff in error. " That was a case," as stated by Mr. Justice Sutherland, " of one partner being a trustee, bringing trust money into the firm without the knowledge or privity of his co-partner of its being trust money." " It has been repeatedly held in such cases," adds the learned judge, " that it does not create a joint debt on the part of the firm, which can be proved against their joint estate. For although the partner abuses his trust, and advances the money to the partnership, it will not raise a contract between the firm and the *cestui que trust*, nor convert the innocent partners into implied trustees." That is not the case of a partner borrowing money for the use of the firm, as is the one under consideration. That money was never placed in the hands of the trustee partner, as partner, for the use and benefit of the firm, nor did the trustee partner receive the money for any such purpose; but in the case at bar the money was originally loaned to Norcott, expressly for the purpose of being used in the grocery business, and the money was so used.

Whitaker was a farmer, residing some four or five miles from the store, and Norcott was the active managing partner, who chiefly superintended and conducted the partnership business, and who best knew the demands and necessities of the firm. He was the accredited agent of the company, and his acts, within the scope of the partnership business of the firm, are binding on all the partners, else would the most gross and palpable frauds be practised upon the community. " To borrow money," says Mr. Justice Van Ness, in *Livingston* v. *Roosevelt*, 4 Johns. R. 267, " and to negotiate bills and notes, are as incidental to, and as usual and necessary in a special as a general partnership. Business of this sort falls equally within the scope of the one as the other, and in the absence of all fraud, the authority of the individual partners to bind the company, is the same in both." " In all money concerns and negotiations in commercial paper, there is nothing upon the face of them, foreign from a limited partnership; nothing to awaken suspi-

cion or excite inquiry, and if one partner in the course of business abuse the special trust in him, innocent third persons might suffer."

Under a different state of facts, Brown might not be considered an innocent third person; he was informed by Roy before he purchased the note, that Whitaker had declared that he was not liable to pay it, although he was not told upon what ground it was that Whitaker claimed to be exempt from liability; yet, enough was communicated to put him on his guard and to make inquiry. That, however, can have no bearing or influence in deciding this cause, as the moneys were actually obtained for the use and benefit of the firm, and were so applied; Brown was well justified in reposing himself upon the law, which in such case declares the liability.

I am satisfied that justice has been administered between these parties; that the finding of the jury is well sustained by the evidence; that they were in no manner misled by the charge of the judge, and that the judgment of the supreme court, affirming the judgment of the court below, should be affirmed.

The question being put, *Shall this judgment be reversed?* all the members of the court voted in the negative.

Whereupon the judgment of the supreme court was AF-FIRMED.