# John Carrier and others v. Wesley M. Cameron.

*Evidence: Express contracts: Prima facie case: Matters not alleged or required to be.* A plaintiff is not usually required in the first instance, in order to maintain his part of the issue on a count setting up an express contract, to give express evidence of matters neither alleged nor required to be alleged in the count.

*Promissory notes: Makers: Partnership: Declaration.* It has never been deemed essential in framing a count by an indorsee upon a promissory note against copartnership makers, to specially allege the capacity of the firm to make notes, or to set forth specially a state of facts which would serve to imply it; it is not necessary for the plaintiff, by any positive averment or by positive proof, to negative a defense which in virtue of a general presumption would be intended not to exist.

*Partnership: Promissory notes: Presumptions: Burden of proof.* When a member of a firm gives a note in the firm name, the presumption is, that it is given for a partnership purpose, and the burden of proof is on the copartnership to show the contrary if they claim such to be the fact.

*Promissory notes: Partnership: Evidence: Fraud.* Where in an action against copartners upon a promissory note signed by the firm name, the plaintiff has shown simply the existence of the firm and who composed it, the making of the note by one of the firm in the firm name, the endorsement by the payee over to the plaintiff, the ownership by the plaintiff and the amount due upon it, it is not competent, upon the assumption that the plaintiff's cause of action is imperatively and irreversibly established, to rule out evidence tending to show that the note was fraudulent in its inception as against the copartnership, and that the payee not only knew this, but was a party to the fraud.

*Promissory notes: Fraud: Bona fide holder: Consideration: Presumptions.* Where the only proof explaining the character of the plaintiff's holding of a note, which is shown to be fraudulent in its inception as between the original parties, is, that he is "owner" of it, and that the payee endorsed it over to him before maturity, the inference would be that he gave no value, and was

not a *bona fide* holder; for it must be intended in that state of things that the original party, not being able to sue upon the instrument himself, had turned it over to another to sue upon it for his benefit.

*Heard January 27.    Decided February 26.*

Error to Bay Circuit.

*Marston, Hatch & Cooley,* for plaintiffs in error.

*Holmes, Haynes & Stoddard,* for defendant in error.

GRAVES, CH. J.

Cameron sued the plaintiffs in error to recover against them on two notes of the following tenor:

"$2,358 91.          CINCINNATI, June 9th, 1873.

Forty days after date, we promise to pay to the order of W. W. Corbit, twenty-three hundred and fifty-eight dollars and ninety-one cents, at Franklin Bank, Cincinnati, O. Value received.

JOHN CARRIER & Co."

"$2,404 59.          CINCINNATI, June 9th, 1873.

Sixty days after date, we promise to pay to the order of W. W. Corbit, twenty-four hundred and four dollars and fifty-nine cents, at Franklin Bank, Cincinnati, O.    Value received.

JOHN CARRIER & Co."

Each note was endorsed " W. W. Corbit."

The declaration counted specially on each note, and likewise contained the general counts with copies of the notes attached.    Each special count averred that the plaintiffs in error were "copartners, doing business under the style and firm name of John Carrier & Co., at Cincinnati, in the state of Ohio," but the nature and scope of the partnership was not set up, nor was it distinctly and expressly averred that the giving of promissory notes was within the stipulated or implied competency of the firm.

The plaintiffs in error pleaded the general issue, and filed and served an affidavit of John Carrier, to preclude its being taken as admitted that the notes were firm transactions, issued on the authority of the copartnership, and obligatory on any body besides himself.

On the trial before a jury, the described notes being produced by the plaintiff below, the plaintiffs in error, by their counsel, admitted that the notes were signed by John Carrier, one of their number, and that the firm was at the time composed of said Carrier and the persons sued with him; but in connection with this admission, they denied that Carrier had any authority whatever to sign either note for the firm.

The plaintiff below thereupon took the stand as a witness in his own behalf, and testified that he owned the notes; that the endorsement on the back was made by Corbit, the payee; that he, witness, saw Carrier sign the firm name as makers to each note, and that Corbit on the same day endorsed the instruments to witness. Evidence was then given of the amount the notes called for, and they were submitted in evidence. The plaintiff below then rested his case, and the foregoing constituted his entire showing, no other evidence being offered by him.

The counsel for plaintiffs in- error then put Carrier upon the stand, and he having sworn that he remembered the giving of the notes, and that they were given at Cincinnati, he was asked by his counsel, " what they were given for."

The counsel for plaintiff below then objected on the ground that it *was shown* that Cameron was a *bona fide* holder; that he became owner and holder of the notes the day they were given. The counsel for defendants below then offered to show that Carrier gave the notes for money borrowed by himself and for his own private use, and not for the use of the copartnership or on its account; that the money was so borrowed of Corbit, the payee; that no part of it was ever in any way used for, or in the interest

or for the benefit of the firm; that no one in the firm besides himself was apprised of the loan, or of the making of the notes, and that he acted throughout for his private benefit, and without authority to employ the firm name; that the other members of the firm never assented to his act, and have never ratified it; that in the first instance the witness borrowed the money of Corbit, who, in course of two or three months, asked witness for two notes representing and securing the amount of the loan, and requested that such notes should be notes of the firm; that witness at first declined, but, expecting that he would be able to pay at maturity, and thinking it would make no difference, finally made the notes in the firm name; that such notes coming due, and he, witness, being unable to make payment, he gave the notes in suit in place of those first mentioned, and by way of renewal, and the old ones were taken up; that he, Carrier, acted in the matter solely on his individual responsibility, and in his individual interest, and without the knowledge of any of the rest of the firm, and wholly without their authority or permission, and that all the facts regarding the irrelation of the firm to the transaction, and the complete independence of the matter of all copartnership concern, were well known to Corbit, the payee.

The court then inquired if it was any part of the proposition to show that Cameron, the plaintiff below, knew any thing of the facts, and the counsel for defendants below then replied in the negative, and added, that he did not know whether Cameron had knowledge or not. Counsel for plaintiff below then insisted upon the objection stated just before this offer, and the court sustained it, and refused to allow the evidence to be given.

No other evidence being offered, as appears by the bill of exceptions, the court instructed the jury to find for the plaintiff below the amount called for by the notes as shown by the proof, and they found accordingly, and judgment was given pursuant to the finding, against the plaintiffs in error, for five thousand and seventy-eight dollars

and two cents. The defendants below then brought the case here on writ of error and bill of exceptions.

The case presents two questions: *First*, was the plaintiff below required, in order to make out a *prima facie* case, to show in the outset that Carrier had express authority to make notes generally, or to make the notes in suit in the firm name, or else to show, either that the copartnership was one of the class in respect to which such authority is presumed, or that its course of business had been such as to imply authority, or that the signing by Carrier had been approved or ratified?

*Second*, whether the rejected proof offered in defense, should have been allowed.

The first question is substantially answered in the negative, by *Littell v. Fitch, 11 Mich., 525*. It was there decided that when a member of a firm gives a note in the firm name, the *presumption* is, that it is given for a *partnership purpose*, and that the burden of proof is on the copartnership to show the contrary. Now, when it appears, as it did in the case at bar with the offered proof excluded, that the notes were signed by one member of an *admitted firm* in the firm name, and where there is nothing to indicate that in giving it the member signing acted wrongly, and in derogation of the rights, or in contravention of the proper power of the copartnership, the presumption stated in *Littell v. Fitch* should be indulged. A plaintiff is not usually required in the first instance, in order to maintain his part of the issue on a count setting up an express contract, to give express evidence of matters neither alleged nor required to be alleged in the count; and it has never been deemed essential in framing a count by an indorsee against copartnership makers, to specially allege the capacity of the firm to make notes, or to set forth specially a state of facts which would serve to imply it. The present declaration contained nothing of the kind, and nothing of the kind was necessary. It was not needful for the plaintiff below, by any positive averment, or positive proof, to

negative a defense which, in virtue of a general presumption, would be intended not to exist. He could not be required to go into particular proof on such a point, until some proof should appear in contravention of the presumption.—See *Drake v. Elwyn, 3 J. Cases, 2 ed., 594; Doty v. Bates, 11 J. R., 544; Dob v. Halsey, 16 Johns., 34; McGregor v. Cleveland, 5 Wend., 475; Whitaker v. Brown, 16 Wend., 505; Vallett v. Parker, 6 Wend., 615; Austin v. Vandermark, 4 Hill, 259; Gansevoort v. Williams, 14 Wend., 133.*

Upon the other point I am not able to assent to the ruling of the circuit court.

When the plaintiff below rested, he had finished his evidence, and what had he shown? Simply this: the existence of the firm, and that the defendants below composed it; that one member of this firm made these notes to Corbit, the plaintiff's endorser, in the firm name; that Corbit endorsed them over to plaintiff the day they were made, and before maturity; that plaintiff was "owner" of them, and that there was a certain amount due upon them. In addition to these facts there was the presumption of fact before mentioned.

Now, this state of things was not conclusive upon the defendants below. It was not competent to rule out a defense upon the assumption that the plaintiff's cause of action was imperatively and irreversibly established. The very offer of the defendants was in direct contradiction of such assumption, and to exclude it upon the notion that the plaintiff's right was by his evidence immovably established, was to take for granted the question in dispute, and this was the complexion of the objection to the offer.

It was certainly competent for the defendants below to show that the notes were fraudulent in their inception as against the copartnership, and that the payee not only knew this, but was actually a party to the fraud, and the offer of proof went to this extent.

If the offered proof had been given, the inference would

have been, that Cameron gave no value and was not a *bona fide* holder, and so not entitled to the protection of one; because it must have been intended in that state of things. " that the original party, not being able to sue upon the instruments himself, had turned them over to another to sue upon them for his benefit."—*Fitch v. Jones, 32 E. L. & E., 134; Bailey v. Bidwell, 13 M. & W., 73; Smith v. Braine, 3 E. L. & E., 379; Harvey v. Towers, 4 E. L. & E., 531.* And the defendant in error, in order to establish a right to recover, would then have been compelled to rebut by showing that in fact he gave or parted with value, or received the notes upon such consideration as to give him the actual position of a *bona fide* holder.—*Smith v. Sac County, 11 Wall., 139; The First National Bank of Cortland v. Green, 43 N. Y., 298; Catlin v. Hansen, 1 Duer, 309; Vallett v. Parker, 6 Wend., 615; Holme v. Karsper, 5 Binn., 469; Beltzhoover v. Blackstock, 3 Watts, 26; Munroe v. Cooper, 5 Pick., 412; Chazournes v. Edwards, 3 Pick., 5; Paton v. Coit, 5 Mich., 505; Edwards on Bills and Notes, 97 to 107, margin, and cases.*

If the recovery here is tested by considering it to have been allowed upon just the state of facts which would have existed if the evidence actually made by the plaintiff had been supplemented by the facts offered to be shown by the defense, the validity of the objection made by plaintiffs in error will appear in a still clearer light. But further remark is unnecessary.

I think for the error excluding the offered proof the judgment should be reversed, with costs, and a new trial ordered.

CAMPBELL, and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.