## LUCY BERRY v. CHANNING WHITNEY.

*Specific performance—Mistake and fraudulent representation as defenses.*

Where the facts would preclude an original contracting party from claiming specific performance because it would operate as a fraud on the defendant, no person claiming through him can assert a better right without showing that he is a *bona fide* purchaser.

Mistake may be shown by parol as a defense to the specific performance of a written instrument.

Fraudulent representations as to the legal effect of an instrument will avoid it, even if made to one who has actually read it, if unable to judge of its true construction. But the fraud must be contemporaneous with the execution of the instrument and must consist in obtaining the assent of the party defrauded, by inducing a false impression as to its legal or literal nature and operation.

A mortgager gave a warranty deed of the land, subject to the mortgage. A woman acting through her husband bought it from his grantee. The mortgage was foreclosed and the mortgager bid in the land. The woman filed a bill to remove the cloud from her title and to compel the mortgager to convey to her the interest he received by the foreclosure sale. The court found that she was not a *bona fide* purchaser without notice that the land was sold subject to the mortgage, and held that it would be unjust to compel a conveyance without payment of the mortgage, and dismissed the bill with costs.

Appeal from Lenawee.    Submitted October 31 and November 1, 1878.    Decided January 15, 1879.

BILL to remove cloud on title.    Complainant appeals.

*A. L. Millard* and *A. Howell* for complainant and appellant. Clauses struck out of an instrument may be regarded in construing it, 2 Pars. Con. [4th ed.], p. 14, n (2); *Strickland v. Maxwell*, 2 Cr. & M., 539. It is as usual to covenant against known as against unknown encumbrances, *Smith v. Lloyd*, 29 Mich., 389. Equity will not relieve one as against a subsequent purchaser for a mistake of law, 1 Story's Eq., Jur., §§ 111, 113, 116, 137; *Hunt v. Rousmaniere*, 1 Pet., 17; *Shotwell v*

*Murray*, 1 Johns. Ch., 512; *Barnes v. Bartlett*, 47 Ind., 98. The meaning indicated by the words of a deed must be taken to show the intention, 1 Spence's Eq. Jur., 556; parol evidence cannot be introduced to vary its terms (*Adair v. Adair*, 5 Mich., 210; *Fuller v. Parrish*, 3 Mich., 214; *Hyde v. Tenwinkel*, 26 Mich., 95; *Beers v. Beers*, 22 Mich., 42) nor to add to them (*Sutherland v. Crane*, Walk. Ch., 523) nor to avoid or restrict the covenant of warranty, *Rathbun v. Rathbun*, 6 Barb., 107; *Movan v. Hays*, 1 Johns. Ch., 342; *Estabrook v. Smith*, 6 Gray, 579; general covenants will not be cut down unless it clearly appears that the parties so intended, 2 Sugd. on Vendors, 104, § 2, and where covenants are of diverse natures and concern different things, restrictive words added to one shall not control the generality of the others although they relate to the same land, id., 114, § 8; Rawle Cov. of Title, 516, § 4; the covenant against encumbrances and the covenant of warranty are distinct and an exception in one does not extend to the other, id., 497; *Howell v. Richards*, 11 East, 633; *Sumner v. Williams*, 8 Mass., 202; *Bemis v. Smith*, 10 Metc., 194; *Donahoe v. Emery*, 9 Metc., 63; the covenant of warranty runs with the land, and the assignee of it is not affected by any equities between assignor and covenantor, Rawle Cov. of Title, 376; *Suydam v. Jones*, 10 Wend., 180; *Whitman v. Weston*, 30 Me., 285; *Brown v. Staples*, 28 Me., 502; 1 Story's Eq. Jur., §§ 108, 139, 165, 434, 436, and the covenantor cannot show that a less consideration was paid than is stated in the deed, for the purpose of affecting the assignee, *Greenvault v. Davis*, 4 Hill, 648.

*Stacy & Underwood* for defendant and appellee. The consideration expressed in a deed is only *prima facie* evidence of the actual consideration, which may be shown by parol to be more or less than is expressed, *Marston v. Hobbs*, 2 Mass., 433; *Smith v. Strong*, 14 Pick., 128; *Bullard v. Briggs*, 7 Pick., 533; *Belden v. Seymour*, 8 Conn., 304; *Dexter v. Manley*, 4 Cush., 26; *Bingham v.*

*Weiderwax*, 1 Comst., 509; *M'Crea v. Purmort*, 16 Wend., 460; *Smith v. Lloyd*, 29 Mich., 389; *Morse v. Shattuck*, 4 N. H., 229; Sedgwick on Damages, 174-8. Of repugnant clauses in a deed, the earlier prevails, 2 Pars. Cont., 513. A general covenant of warranty does not conclusively extend to incumbrances of which a purchaser knows at the time of contracting and agreed to discharge as part of the price, *Allen v. Lee*, 1 Cart. [Ind.], 58; *Ellison v. Ellison*, 1 Lead. Cas. in Eq., 297, n. Where a deed recites that a mortgage encumbers the premises and contains a general covenant of warranty besides, the recital qualifies the covenant, *Jackson v. Hoffman*, 9 Cow., 271; *Bricker v. Bricker*, 11 Ohio St., 240; *Jackson v. Stackhouse*, 1 Cow., 122; *Potter v. Taylor*, 6 Vt., 676; *Keith v. Day*, 15 Vt., 660; *Cole v. Hawes*, 2 Johns. Cas., 203; *McKinstry v. Benson*, 3 Johns. Cas., 562; *Whallon v. Kauffman*, 19 Johns., 97; *Davis v. Lyman*, 6 Conn., 252; 2 Pars. Cont., 501, n. *u.* A deed absolute on its face may be shown by parol to be a mortgage, *Kimball v. Myers*, 21 Mich., 276. The defendant in proceedings for specific performance may show by parol that the written contract does not truly express the agreement of the parties, but that through fraud, surprise or mistake there is some material variance, 2 Story's Eq., §§ 769, 770; 1 Sugd. Vend., ch. 3, § 8, p. 224; Rawle on Cov. of Title, 129, 522, 523. In construing a deed or written contract all the circumstances are to be taken into account, such as the value of land sold and property taken in exchange, *Payne v. Avery*, 21 Mich., 524.

MARSTON, J. Complainant filed her bill in this case to remove a cloud from the title to certain lands claimed by her, and to require defendant to convey to her the interest he received under and by virtue of a deed of the premises from the Michigan State Insurance Company to him. The bill in its effect is one for specific performance.

The defendant in April, 1872, to secure a promissory

note for $2,500, executed and delivered to the insurance company a mortgage upon certain premises then owned by him in the city of Adrian.

In May, 1874, he conveyed this property by warranty deed to Richard A. Watts. The consideration as expressed therein was $4,000, and the grantor covenanted therein that he was well seized of the premises in fee simple; that they were free from all encumbrances, except the above mortgage, and that he would warrant and defend the same against all lawful claims whatsoever.

In July, 1874, Watts sold and conveyed these premises by quit-claim deed to complainant, she at the same time conveying to him in consideration therefor, by warranty deed, 640 acres of land in Arkansas, and she then entered into possession of the premises under her deed from Watts.

In April, 1875, a portion of the interest on the note secured by mortgage given by Whitney to the insurance company being due and unpaid, the mortgage was foreclosed and the premises bid in by the insurance company, and in July, 1876, the time for redemption having expired, defendant Whitney paid to the company the amount for which it had bid off the premises, and received a quit-claim deed of the premises. He also paid to the company the balance of the note and received the note and mortgage from the company, and defendant claims that under his deed from the insurance company he is the absolute owner of the premises.

Complainant claims that as she derived title through defendant's warranty deed to Watts, it was and is defendant's duty to protect her title as against said mortgage, and that whatever title he acquired under the deed from the insurance company inured to her benefit. Such in brief is complainant's claim and theory.

The defendant's differs therefrom in this. He alleges that the premises were by him conveyed to Watts under and in pursuance of a written contract by which these premises were to be by him conveyed subject to this

mortgage; that he (defendant) prepared the deed and executed the same and tendered it to Watts; that as prepared and tendered it described the premises as free from all encumbrances except this mortgage and taxes for the year 1874, "*all of which said Watts is to pay*;" that Watts objected to this clause, saying that under the agreement he was to take the place subject to the mortgage, and that if he chose to let the place go for the mortgage he had a right to do so; that a reference to the written contract showed his position was correct; that Watts then advised defendant to strike out of the deed the words "all of which said Watts is to pay," which would make the conveyance subject to the mortgage, and that relying upon what Watts (who was an attorney) said, these words were stricken out and the deed delivered; that the consideration named in this deed was $4,000; that only $1,400, in property, was actually paid, which, with the amount of the mortgage, interest and taxes, made the value of the premises and consideration $4,000. Defendant denies that complainant is a *bona fide* purchaser, and sets up other matters which will be noticed farther on.

It may be of some importance at the outset to ascertain whether complainant is in any better position to seek the relief prayed for than her grantor Richard A. Watts would be had he not parted with his title, as we may find it not entirely clear that he would be entitled to the relief sought if defendant's version of the entire transaction is correct.

That the defendant's version of the agreement between Watts and himself and what took place at the time of the delivery of the deed, must be taken and accepted as true is beyond dispute. The defendant was examined in his own behalf and testified fully and satisfactorily in regard to the agreement and what was said and done. Watts was not sworn or examined and no evidence was introduced tending to dispute what defendant testified to

concerning the principal transaction between Watts and himself.

Previous to the time of the conveyance by Watts to complainant, Ambrose S. Berry, her husband, had made an assignment to Watts for the benefit of his creditors. Complainant did not see Watts in reference to her trade of the Arkansas lands for those in question. She testified that her husband as her agent negotiated the trade; that he consulted with her before the trade was closed and she consented to it; that he told her there was a mortgage on the premises in question; that Whitney had given Watts a warranty deed; that Watts would give her a warranty deed; and that Whitney would protect the mortgage, and that under those circumstances she told her husband to make the trade. Defendant Whitney testified that he spoke to Watts once about payment of past due interest on the mortgage note, and that the latter said the interest was for Mrs. Berry to pay; that he afterwards had a conversation with complainant's husband, after this controvery had arisen, and asked him if he did not know that Mr. Watts had bought the property subject to the encumbrance, and that Berry in reply gave him an evasive answer, and said that he had defendant's deed of the property to Watts, and should expect to have the consideration of the deed or the property clear.

Considering the relation which existed between complainant and Ambrose S. Berry, who, as her agent, negotiated the trade with Watts, the fact that the latter was acting as assignee of Mr. Berry; that Watts conveyed the property by quit-claim deed; that the agreement between Watts and defendant was as the latter testifies; that neither Ambrose S. Berry nor Watts were placed on the stand or examined in this case,—these and other circumstances tend strongly to show that these parties preferred to stand upon what they considered their strict legal rights under the warranty deed of defendant, acting upon the theory that as notice of the agreement between

Watts and defendant was not shown to have been brought to the notice of complainant personally, she would stand in the position of a *bona fide* purchaser. From a careful reading of all the evidence in the case, and after due consideration thereon, we can come to no other conclusion than that Ambrose S. Berry did, when negotiating the trade as agent of his wife, the complainant, have notice of the agreement between defendant and Watts by which the latter had agreed to take these premises subject to the mortgage, and had retained sufficient of the consideration to indemnify himself against the same, although he did not in terms agree to pay it. Had the agreement been otherwise than as testified to by defendant, Watts undoubtedly would have been called to contradict him, and if Ambrose S. Berry had no notice of this agreement he would have been called to so testify. The case was one which required an explanation from these parties if they had been acting in entire good faith. If their hands were clean they would not have hesitated to show that at least this complainant and her agent had acted in entire good faith.

Where under the facts in a given case the original party would not be permitted to come into a court of equity and insist upon specific performance of an agreement, on the ground that to permit him so to do would operate as a fraud upon the defendant, any person claiming through him, in order to occupy any better position, must establish the fact that he is in fact a *bona fide* purchaser, and this cannot be inferred from showing a purchase alone.

I see no reason why the same principle applicable to the transfer of negotiable paper fraudulent in its inception should not apply in this class of cases also. *Carrier v. Cameron*, 31 Mich., 379.

We are of opinion, therefore, that complainant has not shown herself to be a *bona fide* purchaser in this case.

It is clear under the authorities that mistake may be

shown by parol, as a defense to the specific performance of a written instrument. *Chambers v. Livermore*, 15 Mich., 389. There is also an abundance of authority that fraudulent representations as to the legal operation and effect of an instrument will be sufficient to avoid the same when made to a party who is able to read, or who has actually read the instrument, but who is unable to judge of its true character and construction. To have this effect the fraud must be contemporaneous with its execution, and must consist in obtaining the assent of the party defrauded, by inducing a false impression as to its legal or literal nature and operation. White & Tudor's Eq. Cases, Vol. 2, pt. 1, 559–567 and cases cited.

In this case the agreement was that Watts was to take the property subject to the mortgage. He retained sufficient of the agreed consideration for the premises to indemnify him as against the mortgage. As between these parties the land was primarily set apart for payment of the mortgage debt, and was to be resorted to for that purpose if not paid by Watts. The language contained in the deed of conveyance was changed upon the suggestion of Watts, who was an attorney at law, and upon his assurance that when so changed it would carry out the intention of the parties according to their agreement,—that such would be its legal effect and operation. Whether such would be or not we need not and do not determine. As to Watts and his grantees, not *bona fide* purchasers, the construction given by him to it under the circumstances will be final and conclusive. To compel a conveyance of the premises, without payment of the mortgage, would be grossly unjust to the defendant, and a court of equity in the exercise of a discretion which it has in this class of cases, must under such circumstances deny the relief sought.

The decree of the court below dismissing the bill must be affirmed with costs.

The other Justices concurred.