STEVENS *v.* McLACHLAN.[1]

<table>
<tr><td>120</td><td>285</td></tr>
<tr><td>127</td><td>528</td></tr>
<tr><td>120</td><td>285</td></tr>
<tr><td>s79NW</td><td>627</td></tr>
<tr><td>132</td><td>7643</td></tr>
<tr><td>120</td><td>285</td></tr>
<tr><td>141</td><td>7183</td></tr>
<tr><td>120</td><td>285</td></tr>
<tr><td>145</td><td>7666</td></tr>
</table>

1. TRADING PARTNERSHIP—NEGOTIABLE PAPER—ISSUANCE BY INDIVIDUAL PARTNER.

A member of a trading partnership has implied power to borrow money for the use of the firm, and to issue firm paper therefor.

2. SAME—PRESUMPTIONS.

One who loans money to a member of a trading partnership, on firm paper, is entitled to assume that the money is borrowed for the use of the firm.

3. SAME—DEFENSE TO NOTE—MISAPPLICATION OF PROCEEDS.

It is no defense to a trading firm's note, taken in good faith, for value, and before maturity, that the partner who issued it applied the money obtained thereby to his own use.

4. SAME—PARTNER AS PAYEE—NOTICE.

The fact that partnership paper is made payable to a member of the firm is no evidence that it is not a partnership transaction.

5. SAME—ACTION ON NOTE—BURDEN OF PROOF.

In an action upon notes or drafts issued by a trading partnership, the burden of proof is upon the defendants to show any fraud or lack of authority in the issue of the paper, or that it was not given for partnership purposes.

6. SAME.

When defendants have made such a showing, plaintiff then has the burden of proving that he took the paper in good faith and for a valuable consideration.

7. SAME—NOTICE OF DEFENSE—CIRCUMSTANCES—SUFFICIENCY.

Circumstances sufficient merely to put a cautious man on inquiry are insufficient to charge one taking a partnership note from one of the partners with knowledge of the fact that it was given in fraud of the rights of the other partners, but, to have that effect, the circumstances must be such as to show actual bad faith on his part.

8. SAME.

Bad faith on the part of one seeking to enforce against a

[1] Rehearing denied July 11, 1899.

firm a note given by one of the partners may be established by evidence that he took the note with actual knowledge that it was given for other than partnership purposes.

9. SAME.

The fact that plaintiff had loaned money in other transactions individually to the partner issuing the paper is not evidence to charge him with bad faith; nor does it tend to show a misapplication of the money obtained on the firm note.

10. SAME—RENEWALS—EFFECT.

The renewal of the notes of a trading partnership after the holder has been informed by one of the partners that the notes were issued without authority will not impair the holder's right to recover from the firm.

11. NEW TRIAL—EVIDENCE.

The fact that it was impossible to get a copy of the evidence given upon a former trial in time to read from it material evidence upon a second trial is not ground for a new trial, where the same stenographer took the testimony upon both trials, and could have read the portions of evidence desired.

Error to Wayne; Lillibridge, J. Submitted January 4, 1899. Decided June 5, 1899.

*Assumpsit* by Nathan H. Stevens against Duncan A. McLachlan, James Gourlay, and others, upon negotiable paper. From a judgment for plaintiff on verdict directed by the court, defendants McLachlan and Gourlay bring error. Affirmed.

The declaration in this case is upon the common counts in *assumpsit*, with notice that the suit is based upon certain promissory notes and drafts, copies of which are attached to the declaration. The first was a draft of $1,641.67, dated Detroit, October 5, 1896, payable four months after date, signed, " A. R. Linn, Broker," payable to the order of himself, and addressed to D. A. McLachlan & Co., 34 Buhl Block, Detroit, Mich. It was indorsed: " A. R. Linn, Broker. James Gourlay." Written across its face was the following: " Accepted October 5, 1896. D. A. McLachlan & Co." A note for $965, dated October 21, 1896, signed, "D. A. McLachlan & Co.," indorsed,

"A. R. Linn, Broker. James Gourlay." A like note for $1,500, dated November 11, 1896. A note for $645, dated October 30, 1896. A note dated November 2, 1896, for $395. A note for $975, dated November 5, 1896. All these notes were signed the same, and indorsed the same, as the note first above described. Also, a draft for $635.17, dated Detroit, December 2, 1896, drawn in the same manner, with the same indorsement, and accepted in the same manner, as the draft above mentioned. Defendant McLachlan gave notice with his plea—

(1) That the notes were neither signed nor indorsed by him in his individual or any other capacity, nor was the signing or indorsing authorized by him.

(2) That they were negotiated without his consent or authority, and without any consideration received by him, or paid to the firm of D. A. McLachlan & Co.

(3) That neither he nor the firm of D. A. McLachlan & Co. received any moneys or any benefit by reason of the same.

(4) That the firm name of D. A. McLachlan & Co. upon said notes was unauthorized and a fraud upon him.

(5) That plaintiff, at the time of taking said notes, knew that they did not appertain to the business of D. A. McLachlan & Co., and were not given for the use of said firm.

(6) That plaintiff was interested with said Linn in other business enterprises, and that the proceeds of said notes were used in such enterprises.

(7) That he is not liable thereon, because of the fraud of others, of which fraud plaintiff is chargeable with knowledge.

Defendant Gourlay gave notice that he would show that the notes were used by Linn in his own business and in the business of the Anderson Safety Elevator Company, and not in the business of D. A. McLachlan & Co., sugar dealers, and that plaintiff had notice thereof.

The court directed a verdict for the plaintiff.

On March 16, 1896, McLachlan and Linn entered into a copartnership to do business in teas, sugars, molasses, etc., under the firm name of D. A. McLachlan & Co. McLachlan agreed to furnish $5,000 in cash, and such

other assistance as he might deem necessary. Linn was intrusted with the entire management of the business; the agreement providing that "A. R. Linn shall buy and sell merchandise for the benefit of said firm, using all former names as indorsers when he can obtain the same." Profits were to be divided equally between them. The agreement was to continue until McLachlan should elect to alter or discontinue it. The business was carried on for some time, and profits made and divided. It finally became unprofitable. For some time prior to the date of this agreement, Linn had been engaged in business, had become involved, and did business under the name of "A. R. Linn, Broker," and "A. R. Linn, Agent." Gourlay had been one of his indorsers. Mr. Stevens resided in Chatham, Ontario. Mr. Linn applied to him for a loan of money for the firm of D. A. McLachlan & Co., stating the purpose for which it was to be used. One Mattullath was also employed by Linn for the firm, and he negotiated some of these loans. The notes in suit were renewals of other notes. McLachlan insists that he knew nothing of the existence of these notes until October, 1896. He claims that the moneys received were neither borrowed nor used for the purposes of his firm, that the firm was an accommodation maker, and that Linn had no authority to sign them. He also makes the further defense that the firm, being an accommodation maker on the original notes, was discharged by the renewal of the notes extending the time. Any further necessary statement of facts will be found stated in the opinion.

*Gartner & Stricker*, for appellant McLachlan.

*Harlow P. Davock*, for appellant Gourlay.

*J. H. Cole* (*Geer & Williams*, of counsel), for appellee.

GRANT, C. J. (*after stating the facts*). The rules of law applicable to the commercial paper here in controversy are well established. As briefly as I am able to state them, they are as follows:

1. D. A. McLachlan & Co. being a trading or commercial partnership, each member of the firm, and especially · the one intrusted with the transaction of its business, was authorized to bind his partner in all transactions pertaining to the business of the firm. Among these was the right to borrow money for the firm, and to issue notes therefor, or to draw drafts for the same purpose. The lender was entitled to assume that the money was borrowed for the use of the firm. *Winship* v. *Bank*, 5 Pet. 529; *Stimson* v. *Whitney*, 130 Mass. 591; *Kimbro* v. *Bullitt*, 22 How. 256; *Dowling* v. *Bank*, 145 U. S. 512; *Smith* v. *Collins*, 115 Mass. 388; *Sherwood* v. *Snow*, 46 Iowa, 481 (26 Am. Rep. 155); 4 Am. & Eng. Enc. Law (2d Ed.), 176; *Feurt* v. *Brown*, 23 Mo. App. 332.

2. If plaintiff took the paper in good faith, for value, before maturity, and without knowledge, either actual or constructive, that it was tainted with fraud, his title thereto is perfect. In such case it is no defense that the money was misapplied by one of the partners. *Nichols* v. *Sober*, 38 Mich. 678; *Fuller* v. *Percival*, 126 Mass. 381; *Atlas Nat. Bank* v. *Savery*, 127 Mass. 75 (34 Am. Rep. 345); *First Nat. Bank* v. *Morgan*, 73 N. Y. 593; *Real-Estate Investment Co.* v. *Smith*, 162 Pa. St. 441; *Phillips* v. *Stanzell*, (Tex. Civ. App.) 28 S. W. 900; *Whitaker* v. *Brown*, 16 Wend. 505; *Mechanics' Bank* v. *Foster*, 44 Barb. 87; *Gale* v. *Miller*, Id. 420.

3. The taker of a promissory note or bill of exchange may lawfully presume that it is a partnership transaction. *Schwanck* v. *Davis*, 25 Neb. 196; *Doty* v. *Bates*, 11 Johns. 544; *Whitaker* v. *Brown*, 16 Wend. 505; *Haldeman* v. *Bank*, 28 Pa. St. 440 (70 Am. Dec. 142); *Littell* v. *Fitch*, 11 Mich. 525; *Carrier* v. *Cameron*, 31 Mich. 373 (18 Am. Rep. 192).

4. The fact that such paper is payable to a member of the firm is no evidence that it is not a partnership transaction. *Ihmsen* v. *Negley*, 25 Pa. St. 297; *Haldeman* v. *Bank*, 28 Pa. St. 440 (70 Am. Dec. 142); *Feurt* v. *Brown*, 23 Mo. App. 332.

5. The *onus probandi* was upon the defendant to show any fraud, lack of authority, or that the paper was not given for partnership purposes. *Littell* v. *Fitch*, 11 Mich. 525; *Carrier* v. *Cameron*, 31 Mich. 373 (18 Am. Rep. 192); *Doty* v. *Bates*, 11 Johns. 544; *Whitaker* v. *Brown*, 16 Wend. 505; *Sherwood* v. *Snow*, 46 Iowa, 481 (26 Am. Rep. 155); *Phillips* v. *Stanzell*, (Tex. Civ. App.) 28 S. W. 900.

6. When such fraud is shown, the *onus probandi* then shifts to the plaintiff to show that he took the paper in good faith and for a valuable consideration. *Vosburgh* v. *Diefendorf*, 119 N. Y. 357 (16 Am. St. Rep. 836), and authorities there cited.

7. Proof of circumstances which would be sufficient to put a prudent man upon inquiry is not sufficient to defeat recovery. The circumstances must be such as to show *mala fides* on the part of the holder. This may be shown by evidence of actual knowledge of the purposes for which the paper was given. *Nichols* v. *Sober*, 38 Mich. 678; *New York Iron Mine* v. *Citizens' Bank*, 44 Mich. 344; *Miller* v. *Finley*, 26 Mich. 249 (12 Am. Rep. 306); *Borden* v. *Clark*, 26 Mich. 410; *Chapman* v. *Remington*, 80 Mich. 552; *Goodrich* v. *McDonald*, 77 Mich. 486; *Atlas Nat. Bank* v. *Savery*, 127 Mass. 75 (34 Am. Rep. 345); *Goodman* v. *Harvey*, 4 Adol. & E. 870.

8. If the plaintiff was a *bona fide* holder of the original paper, his right to recover is not defeated by renewals, and McLachlan was not released thereby. *Tilford* v. *Ramsey*, 37 Mo. 563; *Preston Nat. Bank* v. *Pierson*, 112 Mich. 435; *Wilson* v. *Richards*, 28 Minn. 337; *Hopkins* v. *Boyd*, 11 Md. 107.

We have cited only a few of the authorities referred to in the briefs of counsel. Mr. McLachlan saw fit to enter into a trading partnership with Mr. Linn, which expressly provided for the borrowing of money, the making of promissory notes, and the procuring of indorsements. Mr. Linn, both by express contract and by implication, had the power to borrow the money and make the paper in contro-

versy. If there is any competent evidence in the record that the money obtained from plaintiff was not used in the partnership business, it has escaped my attention. Mr. Linn testified that it was. The only testimony to the contrary is that of Mr. Gourlay on redirect examination, who testified that Mr. Linn, after the controversy over these notes had arisen, said to him that "he put fifteen thousand or twenty thousand dollars into the elevator scheme." This testimony might be legitimate to impeach Mr. Linn if the proper foundation had been laid, but it is not affirmative evidence of a diversion of the money obtained upon these notes from the business of McLachlan & Co. If, however, there were such evidence, the record is barren of testimony tending to show that plaintiff was guilty of any *mala fides* in the transaction, or that he had any knowledge that the moneys obtained from him were to be, or ever were, diverted from the partnership. Linn informed him of the partnership, told him what he wanted the moneys for, and plaintiff took the paper in full reliance upon Linn's representations. In some cases he advanced the money; in others he indorsed the paper, and the money was obtained at the bank. When the notes became due, he paid them. The mere fact that he was engaged in other transactions, and had indorsed other paper, and had loaned other moneys to Linn and Mattullath, is no evidence of bad faith, and does not tend to show that any of these moneys were appropriated for other purposes. Upon the record, the court properly directed a verdict for the plaintiff.

Some of these notes were renewed after McLachlan had notified plaintiff by letter, repudiating his liability upon them, and stating that Linn had no authority to make them. The partnership at the time was in existence, and, under the authorities above cited, McLachlan was not relieved by the mere renewals. Having power to make them, he had also the power to renew them while the partnership lasted.

The only remaining question is whether the court erred in the exclusion of testimony. The defendants offered in

evidence other notes of similar character to these, which are also in suit, and also certain letters which passed between the parties. There is nothing in them which could be construed to show notice to plaintiff of any of the defenses set up, or any knowledge thereof on his part. They were properly excluded.

Defendants made a motion for a new trial upon the ground that they had been deprived of certain evidence given by plaintiff upon a former trial. This evidence consisted of testimony which had been taken between the same parties in a suit tried just before the trial of the present case, which lasted nearly a week. The same attorneys tried that case; the same stenographer took the testimony. This testimony was subsequently written out, and the claim is now made that it was impossible for the defendants to have had a copy of it for use upon the present trial, and that plaintiff gave testimony upon the other trial material to the defense in this case. If this were so, the stenographer could easily have had his attention called to it, and the testimony read over, during the progress of this trial. We think the court properly refused to grant a new trial upon this showing.

Judgment affirmed.

MONTGOMERY and LONG, JJ., concurred with GRANT, C. J. HOOKER and MOORE, JJ., did not sit.